Chris ALFORD and Tyson
Alford, Appellants,

v.

John WHALEY, Kathline Whaley,
Michelle Whaley, and Patrick
Whaley, Appellees.

No. 01–89–01251–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 9, 1990.

Jaime A. Drabek, Barbara O. Hachen-
burg, Hirsch, Glover, Robinson & Sheiness,
A.P.C., Houston, for appellants.

David D. Williams, Houston, for appel-
lees.

Before SAM BASS, HUGHES and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a judgment rendered in favor of appellees, the Whaleys, for damages sustained in an automobile collision. The trial court awarded $25,000 in attorney's fees and an additional $15,000 in the event of an unsuccessful appeal to Patricia Saum, the guardian ad litem of Patrick Whaley, a minor. Appellants do not contest the reasonableness of the $15,-000 fee.

The judgment is reformed, and affirmed as reformed.

In their first point of error, appellants argue that the trial court abused its discretion in awarding $25,000 to the guardian ad litem, Patricia Saum, because the evidence was factually insufficient. In their second point of error, appellants argue that Ms. Saum's affidavit does not support the award, because the hours worked multiplied by Saum's hourly rate is less than the amount actually awarded.

Before addressing appellants' points of error, this Court must determine whether appellants complied with Tex.R.App.P. 53, by making their request for a partial statement of facts, and later serving all attorneys of record with a statement of points to be relied upon for appeal. If appellants complied with rule 53, they obtained the benefit of the presumption that nothing omitted from the record is relevant to the disposition of the appeal. Tex.R.App.P. 53(d). If appellants did not comply with the rule, then the judgment will be affirmed, because this Court may not find reversible error in the absence of a complete record of the case before us. *Christiansen v. Prezelski*, 782 S.W.2d 842, 842 (Tex.1990).

The record reflects that the final judgment, awarding $25,000 in attorney's fees for the trial of the case to Ms. Saum, and

$15,000 "[i]n the event of an appeal," was signed **August 21, 1989**. On **September 7, 1989**, appellants requested the court reporter to include only the "hearing on Plaintiff's Motion to Tax Guardian Ad Litem Fees" in the statement of facts. On **September 12, 1989**, appellants filed a motion for partial new trial that contested the $25,-000 award of attorney's fees. On **October 6, 1989**, the court signed a judgment nunc pro tunc that provided for an award of $15,000 to Ms. Saum, "[i]n the event of an *unsuccessful* appeal." (Emphasis added.) On **November 17, 1989**, appellants filed a cost bond, stating their intention to appeal that portion of the judgment awarding $25,000 in attorney's fees to Ms. Saum. Finally, appellants filed a statement of points to be relied upon for appeal. Although the designation of points of error was not file-marked, the certificate of service indicates that copies were forwarded to all counsel of record on **December 20, 1989**.

We must determine whether the original final judgment or the judgment nunc pro tunc began the running of the appellate timetable. In civil cases, when clerical mistakes in a judgment are corrected by a judgment nunc pro tunc after the expiration of the court's plenary power, the time periods prescribed for filing the various documents in connection with the appeal, "shall run from the date of signing the corrected judgment *with respect to any complaint that would not be applicable to the original judgment.*" Tex.R.App.P. 5(b)(1) & (c) (emphasis added).

However, this provision presupposes that the judgment nunc pro tunc, which purported to correct a clerical error in the original judgment, was in fact a judgment nunc pro tunc. It is well settled that a judicial error cannot be corrected by a judgment nunc pro tunc. *Mathes v. Kelton*, 569 S.W.2d 876, 877 (Tex.1978); *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973).

A judicial error is one that occurs in rendering a judgment. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986); *see*

*also Mathes,* 569 S.W.2d at 878 (changing the name of the party entitled to possession of a ring materially altered the substance of the original judgment and was the correction of a judicial error, which cannot be accomplished by a judgment nunc pro tunc); *Finlay v. Jones,* 435 S.W.2d 136, 138–39 (Tex.1968) (erroneous recitations in original judgment, that the defendant (1) had been duly served with citation, and (2) had not appeared and not filed an answer, were judicial errors); *Love v. State Bank & Trust Co. of San Antonio,* 126 Tex. 591, 593–96, 90 S.W.2d 819, 820–21 (Tex. Comm'n App.1936, opinion adopted) (unintended judgment of dismissal was a judicial error, even though case was inadvertently placed on the list of cases to be dismissed for want of prosecution).

A clerical error is a mistake or omission that prevents the judgment as entered from accurately reflecting the judgment that was rendered, *Universal Underwriters Ins. Co. v. Ferguson,* 471 S.W.2d 28, 29–30 (Tex.1971), i.e., a mistake in entering or recording the judgment. *Escobar,* 711 S.W.2d at 231–32 (discrepancy in the acreage description of land).

In determining whether a correction is of a judicial or clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *Escobar,* 711 S.W.2d at 231. A judgment nunc pro tunc can only be used to correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* at 231–32. Thus, even if a court renders a judgment incorrectly, it cannot alter a written judgment that precisely reflects the incorrect rendition by means of a judgment nunc pro tunc. *Id.* at 232.

■ At the hearing on the motion to tax guardian ad litem fees, the trial judge stated that Ms. Saum would receive $15,000 in attorney's fees "[i]n the event of an ap-

peal." We find nothing in the record to indicate that the original judgment, which contained the same unconditional award of appellate attorney's fees, incorrectly stated the judgment actually rendered. Accordingly, we hold that the change from "[i]n the event of an appeal," in the original judgment, to "[i]n the event of an *unsuccessful* appeal," contained in the judgment nunc pro tunc, was the correction of a judicial error that cannot be accomplished by a judgment nunc pro tunc.

■ Although the **October 6, 1989,** judgment is labelled a "judgment nunc pro tunc," that language does not limit the trial court's power to alter in any way its judgment in this case. *See Mathes,* 569 S.W.2d at 878 n. 1. Because a motion for new trial was timely filed by appellants, the trial court had plenary power to modify, correct, or reform the judgment until 30 days after the motion was overruled. *See id.* at 878; Tex.R.Civ.P. 329b(e). The judgment nunc pro tunc was entered **October 6, 1989,** only 24 days after **September 12, 1989,** when the motion for new trial was filed. Therefore, the trial court had jurisdiction to correct its judgment.

If a judgment is corrected, modified, or reformed "in any respect," the time for appeal begins to run from the date the corrected judgment is signed. *Clark v. McFerrin,* 760 S.W.2d 822, 825 (Tex.App.— Corpus Christi 1988, writ denied); Tex.R. Civ.P. 329b(h).[1] Accordingly, the time periods for filing the various documents in connection with perfecting the appeal ran from the date of the signing of the judgment nunc pro tunc, on **October 6, 1989.**

■ An appeal is perfected by filing a cost bond, affidavit, or cash deposit within 90 days from the signing of the judgment when a motion for new trial is filed. *Clark,* 760 S.W.2d at 824; Tex.R.App.P. 41(a)(1). A motion for new trial, filed before a corrected judgment is entered, ex-

---

1. If the trial court corrects a clerical error pursuant to Tex.R.Civ.P. 316 after the court's plenary power has expired, no complaint can be made on appeal that could have been presented in an appeal from the original judgment. Tex. R.Civ.P. 329b(h).

tends the time for filing the appeal bond until 90 days after the date the corrected judgment is entered, as long as the substance of the motion is such as could properly be raised with respect to the corrected judgment. *Clark*, 760 S.W.2d at 825; *Miller v. Hernandez*, 708 S.W.2d 25, 26–27 (Tex.App.—Dallas 1986, no writ); *see also* Tex.R.App.P. 58; Tex.R.Civ.P. 306c. The motion for new trial complained about the award of $25,000 in trial attorney's fees contained in the original judgment, a matter which could properly be raised with respect to the judgment nunc pro tunc. Accordingly, appellants had until **January 4, 1990**, to perfect their appeal.

■ Rule 53(a) of the Texas Rules of Appellate Procedure provides that the appellant shall make a written request for the statement of facts to the official reporter, at or before the time for perfecting the appeal. In order to obtain the benefit of the presumption that "nothing omitted from the record is relevant to any of the points specified or to the disposition of the appeal," an appellant who requests a partial statement of facts shall also include a statement of the points to be relied upon for appeal in the request. Tex.R.App.P. 53(d). Appellants' request for a partial statement of facts, dated **September 7, 1989**, was before the time for perfecting the appeal. Although appellants did not include a statement of points to be relied upon for appeal in that request, they later served such a statement upon all attorneys of record, on **December 20, 1989**, well within the time for perfecting the appeal. Although the statement of points to be relied upon for appeal is not file-marked, it appears in the transcript, along with the request to the court reporter, which is file-marked. We hold that an appellant, who timely requests a partial statement of facts in writing from the official reporter, and who later serves all parties with a statement of points to be relied upon for appeal in a separate writing within the time for perfecting the appeal, obtains the benefit of the presumption that nothing omitted from the record is relevant to any of the points specified or to the disposition of the appeal, where both writings appear in the record.

We recognize that an appellant who files a partial statement of facts must strictly comply with the rules in order to benefit from the strong presumption that nothing omitted from the record is relevant to appellants' point of error. *Watson v. State*, 687 S.W.2d 51, 52–53 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Dresser Indus., Inc. v. Forscan Corp.*, 641 S.W.2d 311, 315 (Tex.App.—Houston [14th Dist.] 1982, no writ); *see also Texas Construction Group, Inc. v. City of Pasadena*, 663 S.W.2d 102, 104–105 (Tex.App.—Houston [14th Dist.] 1983, writ dism'd) (where appellant timely requested a partial statement of facts, but did not *timely* designate the points of error, there was no strict compliance with rule and presumption could not be invoked). Had appellants made their written request to the court reporter on December 29, 1989, and included a statement of points to be relied upon for appeal in that same document, which was properly filed and part of the record before this Court, there is no question that they would invoke the presumption. We find that appellants invoked the presumption since both the request and the statement of points were timely made, albeit in separate documents, and both appear in the record.

We now review the record with the presumption that nothing omitted from the record is relevant to the disposition of this action. A review of the evidence is necessary to address appellants' points of error.

By "affidavit" attached to her motion for ad litem fees, and statements made at the hearing, Ms. Saum explained why she thought her fees were reasonable. Ms. Saum was a solo practitioner with eight years trial experience. She stated that she generally does not take cases on an hourly basis, noting that in the last two felony cases she tried, she received a flat fee of $10,000. However, Ms. Saum further said that when she charged an hourly fee, her usual rate was $150 per hour.

Saum admitted that she did not keep detailed time records; however, she spoke with the appellees' attorney, Mr. Williams, on "numerous occasions" about the case. On the weekend prior to trial, she spent six hours reviewing the file and talking to her client. She spent approximately 12 hours per day during the week of trial, including court time and research time. Ms. Saum was in the courtroom during the three-day trial, and she was also in the courtroom the day before trial from 9:00 a.m. until 3:30 p.m., trying to obtain a jury panel, and waiting for appellees' counsel. She estimated that she had already spent, and would spend: (1) 25 hours in pretrial preparation; (2) 50 hours during trial; and (3) 15 hours for post-trial matters.

Ms. Saum said that when Judge McCorkle appointed her, he told her that if appellees lost, he would not tax the costs for the loss against appellants. Further, he would not require appellees to pay her fee, because they would not be able to pay it. Saum also noted that she had subjected herself to liability for malpractice if she failed to properly represent Patrick. In an effort to settle the ad litem fees issue with appellants, she attempted to reach appellants' attorney, but her calls were never returned. She then hand-delivered the motion for ad litem fees to appellants' attorney's secretary, and received a call from the attorney, 20 minutes later.

Ms. Saum mentioned several ways that her services benefitted Patrick Whaley. She stated that appellants had offered only $70,000. Her client actually recovered $132,000 in damages, and $15,069.63 in prejudgment interest. Saum was the only one who noticed, during voir dire, that one of the prospective jurors, a friend of one of the defendants, winked at the defendant. Until she had spoken with Patrick, he had trouble relating the extent of the physical pain and mental anguish he suffered from the accident. She noted that Patrick Whaley's jury awards were considerably higher than those for his parents and sister.

By affidavit and statements at the hearing, Mr. Drabek, attorney for appellants, contested Ms. Saum's fees. Drabek had almost nine years of trial experience, and he noted that Saum had not presented any time records to the court. He further stated that "this was not a complex piece of litigation." Drabek urged that her request of $25,000 was unreasonable, because it exceeded the figure derived from multiplying her hourly rate by the hours worked, in the amount of $13,000.

Mr. Williams, appellees' attorney, corroborrated the hours that Saum had worked on the case. He stated that the case was "no small animal to digest." He also said that Patrick was much more able to articulate his damages because Saum had established a rapport with Patrick Whaley, "an intangible that is sometimes hard to do."

In reviewing a factual insufficiency challenge, this Court must consider all of the evidence in the record, both supporting and conflicting with the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). The finding must be upheld unless it is shown that the evidence is so weak as to be manifestly erroneous or unjust. *Levinge Corp. v. Ledezma*, 752 S.W.2d 641, 643 (Tex.App.—Houston [1st Dist.] 1988, no writ). The duty of an appellate court is to review the evidence as presented in the trial court, and not to substitute its judgment for that of the trier of fact, whether judge or jury. *Lemond v. Jamail*, 763 S.W.2d 910, 913 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

Rule 173 of the Texas Rules of Civil Procedure provides that a guardian ad litem is entitled to a reasonable fee to be taxed as part of the costs of the court in cases where a minor is represented by a next friend, whose interests are adverse to those of the minor. The determination of the proper award of guardian ad litem fees is within the sound discretion of the trial court. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex.1987); *Smith v. Smith*, 720 S.W.2d 586, 591 (Tex.App.—Houston [1st Dist.] 1986, no writ). Absent a clear abuse of discretion appearing in the

record, an appellate court will not set aside the amount of fees awarded to a guardian ad litem. *Simon,* 739 S.W.2d at 794; *Smith,* 720 S.W.2d at 591.

A trial court's discretion to award an ad litem fee is not unbridled. *Simon,* 739 S.W.2d at 794. The test is whether the trial court's decision was arbitrary or unreasonable. *Smith,* 720 S.W.2d at 591; *see also Dawson v. Garcia,* 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ).

■ There is no requirement that there be evidence in the record to support a court's award of attorney's fees to a guardian ad litem. *Smith,* 720 S.W.2d at 591; *Transport Ins. Co. v. Liggins,* 625 S.W.2d 780, 785 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Even though *Smith* and *Liggins* do not require that evidence be presented to support fees awarded to a guardian ad litem, evidence was presented in this case to support the award of attorney's fees to the guardian ad litem. *See Smith,* 720 S.W.2d at 591.

■ The determination of the reasonableness of ad litem fees is generally controlled by the same factors used to determine the reasonableness of attorney's fees. *Simon,* 739 S.W.2d at 794. This Court has previously set out the factors to consider in determining the reasonableness of attorney's fees:

(1) the time and labor involved;

(2) the nature and complexities of the case;

(3) the amount of money or the value of the property or interest involved;

(4) the extent of the responsibilities assumed by the attorney;

(5) whether other employment is lost by the attorney because of the undertaking;

(6) the benefits resulting to the client from the services;

(7) the contingency or certainty of compensation; and

(8) whether the employment is casual or for an established or constant client.

*Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 148–49 (Tex.App.—Houston [1st Dist.] 1986, no writ); *see also Simon,* 739 S.W.2d at 794. Further, an appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their experience as lawyers and judges to view the matter in light of the testimony, the record, and the amount in controversy. *Dawson,* 666 S.W.2d at 264; *Golden v. Murphy,* 611 S.W.2d 914, 916 (Tex.Civ.App. —Houston [14th Dist.] 1981, no writ).

In our case, appellants argued that the case was not complex. Mr. Williams, appellees' attorney, testified that the case was "no small animal to digest." Ms. Saum described the case as being hotly contested on liability and damages issues. She stated that she had spent approximately 75 hours preparing for and trying the case, and that she would spend approximately 15 hours handling post-trial matters, and that $150 per hour was a reasonable fee. Mr. Williams corroborated the hours she worked on the case. Appellants urge that the trial court should have awarded Saum a fee equal to her hourly rate of $150, multiplied by the number of hours she worked, 75, plus the estimated 15 hours for post-trial work ($150 × 90), yielding an amount of $13,500. We agree.

Ms. Saum urges that she is entitled to the total award of $25,000 because she conferred a benefit on her client and took the risk that she would not be paid if Patrick Whaley did not recover. While Ms. Saum may have been told she would not be paid if Patrick did not recover, it is important, for policy reasons, that the minor plaintiff have competent counsel, and that "the attorney who accepts the appointment should be reasonably sure of receiving the fee for his services which is provided for in Rule 173." *Davis v. Henley,* 471 S.W.2d 883, 885 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). A guardian ad litem must be paid a reasonable fee, win or lose. *See* Tex.R.Civ.P. 173. A trial judge cannot refuse to award a reasonable fee,

based on the result of the trial. *See id.* Further, this Court is aware that Ms. Saum recommended that Patrick not settle for $70,000, and that her efforts, as well as those of Mr. Williams, led to a verdict for Patrick. However, we find that the hourly rate of $150 encompassed all of the factors to be considered in determining whether a fee is reasonable, including the benefit conferred on Patrick Whaley. In sum, the record before this Court shows a total of 90 hours for trial work, at an hourly rate of $150 per hour. Based upon that record, we find that the trial court abused its discretion in awarding $25,000.

Appellants' first and second points are sustained.

Accordingly, we reform the judgment of the trial court by ordering that the award of guardian ad litem fees be set at $13,500 for work performed at the trial level. The judgment is affirmed as reformed.