IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-070-CV


 


ELAINE BADOUH HALE,



 APPELLANT


vs.





ESTATE OF RUBYLIEN BARBER BADOUH, N.C.M.; 


GUARDIAN KIMBEL L. BROWN; AND ED BADOUH, JR.,



 APPELLEES


AND



NO. 3-93-439-CV




ELAINE BADOUH HALE,



 APPELLANT


vs.




EDWARD BADOUH, JR., ESTATE OF RUBYLIEN BARBER BADOUH, N.C.M.; 


AND KIMBEL L. BROWN, GUARDIAN,




 APPELLEES




 



FROM THE COUNTY COURT AT LAW OF COMAL COUNTY 



NO. 92-PC-9485, HONORABLE FRED R. CLARK, JUDGE PRESIDING


 




 In appeal number 3-93-070-CV, Elaine Badouh Hale appeals from a trial-court
judgment rendered against her in actions brought by Edward Badouh, Jr., on behalf of Rubylien
Barber Badouh ("Mrs. Badouh"), seeking declaratory relief and damages for breach of fiduciary
duty under former section 113 of the Texas Probate Code. (1) See Uniform Declaratory Judgments
Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1986 & Supp. 1994). We will
affirm the trial-court judgment.

 In appeal number 3-93-439-CV, Elaine Badouh Hale appeals a trial-court order
authorizing the guardian of Mrs. Badouh's estate to settle a lawsuit pending in Bexar County. We
will affirm the trial-court order. 



 THE CONTROVERSY


 Rubylien Barber Badouh has severe end-stage Parkinson's Disease and requires
continuous home-nursing care. Edward Badouh, Jr. ("Edward") and Elaine Badouh Hale
("Elaine") are Mrs. Badouh's children. For some years, Elaine managed Mrs. Badouh's estate
under a durable power of attorney. 

 In January 1992, Edward applied to the court below for the appointment of a
person, named in the application, as guardian of Mrs. Badouh's estate, averring that she was
incompetent and unable to manage her estate. See Act of May 23, 1987, 70th Leg., R.S., ch.
463, § 3, 1987 Tex. Gen. Laws 2050 (Tex. Probate Code Ann. § 111, since amended). (2) The
court appointed Kimbel Brown to serve in that proceeding as Mrs. Badouh's attorney ad litem. 
See Act of May 23, 1989, 71st Leg., R.S., ch. 1261, § 1, 1989 Tex. Gen. Laws 5082 (Tex. Prob.
Code Ann. § 113A, since repealed) ("section 113A"). Elaine also appeared in the cause.

 Elaine and Mrs. Badouh opposed Edward's application on the ground that it was
unnecessary because Mrs. Badouh's estate was already sufficiently protected because she had
executed a "declaration of guardian" in the event of later incompetence. This document, signed
by Mrs. Badouh after Edward filed the application, appointed John Thomas Ragusa guardian of
Mrs. Badouh's estate should she become incompetent. Edward filed a contest to the "declaration
of guardian," alleging Elaine had procured Mrs. Badouh's execution of the document through
fraud and duress. Additionally, Edward sued for a declaratory judgment setting aside the
declaration of guardian, the durable power of attorney under which Elaine had acted for several
years, and a "living will" that Mrs. Badouh had executed earlier. He also requested an accounting
regarding transactions Elaine had made under the power of attorney, including payments to herself
and her family, and judgment for any sums found owing by Elaine. 

 After trial, the jury found: (1) Mrs. Badouh was currently of unsound mind, and
was of unsound mind when she executed the "declaration of guardian" and (2) Elaine breached 
fiduciary duties owed Mrs. Badouh under the power of attorney by taking funds for herself and
third parties from Mrs. Badouh's bank accounts. The jury fixed at $157,501.50 the amount taken
in violation of Elaine's fiduciary duties. 

 The jury failed to find: (1) Mrs. Badouh was of unsound mind when she executed
the durable power of attorney or the living will; or (2) that Elaine unduly influenced or exerted
duress on Mrs. Badouh to obtain her signature on any of the three documents.

 The trial court rendered judgment against Elaine on the jury's verdict and appointed
Kimbel Brown guardian of Mrs. Badouh's estate. (3) Elaine appeals the portion of the judgment
rendered against her.



STANDING OR CAPACITY TO SUE


 In her first point of error, Elaine asserts that Edward did not have standing to
maintain claims against her. Edward responds (4) that he sued only in a representative capacity on
Mrs. Badouh's behalf. He argues, therefore, that the issue is his capacity to sue as Mrs. Badouh's
representative, not his standing as an individual. We agree.

 "Standing" and "capacity" are distinct concepts. See Develo-cepts, Inc. v. City of
Galveston, 668 S.W.2d 790, 793 (Tex. App.--Houston [14th Dist.] 1984, no writ). The doctrine
of "standing" inquires whether a cause of action belongs to the party who asserts it. See Hunt v.
Bass, 664 S.W.2d 323, 324 (Tex. 1984); Williams v. Anderson, 850 S.W.2d 281, 283 (Tex.
App.--Austin 1993, writ denied). If the person to whom the cause of action belongs is
incompetent, another person may maintain the action, in a representative capacity, on the
incompetent person's behalf. 

 When a person sues as a representative for an incompetent person, the incompetent
person is the real party plaintiff. Henderson v. Shell Oil Co., 182 S.W.2d 994, 995 (Tex. 1944);
McGinnis v. McGinnis, 267 S.W.2d 432, 435 (Tex. Civ. App.--San Antonio 1954, no writ). 
Therefore, Mrs. Badouh is the person who must have standing to bring the claims pressed in her
name by Edward. The issue with regard to Edward is whether he may lawfully act as Mrs.
Badouh's representative. We will therefore address Elaine's point of error as a complaint
regarding Edward's capacity to sue as Mrs. Badouh's representative.

 Edward asserts he was entitled to sue on Mrs. Badouh's behalf under former
section 113 of the Probate Code. That statute provides as follows: 



 Any person has the right to appear and contest the appointment of a particular
person as guardian, or to contest any proceeding which he deems to be injurious
to the ward, or to commence any proceeding which he deems beneficial to the
ward.



Edward contends he was also entitled to act as Mrs. Badouh's "next friend" under Texas Rule of
Civil Procedure 44, which provides in part: "[P]ersons non compos mentis who have no legal
guardian may sue and be represented by `next friend'" Elaine acknowledges Edward sued on
Mrs. Badouh's behalf. (5) She complains, however, that he did not expressly assert his
representative capacity in his pleadings. (6) 

 A party suing in representative capacity should expressly allege his right to sue on
behalf of the person he represents. See, e.g., McGinnis, 267 S.W.2d at 435; 2 Texas Civil
Practice § 8.8, at 189 (Diane M. Allen et al. eds., 1992 ed.). However, if a party fails to allege
the proper capacity, the omission is curable by amendment. Rainey-Mapes v. Queen Charters,
Inc., 729 S.W.2d 907, 911 (Tex. App.--San Antonio 1987, writ dism'd w.r.m); Develo-cepts Inc.,
668 S.W.2d at 793. Thus, a defendant who contests the plaintiff's right to recover in the capacity
in which he sues must raise the issue in the trial court in a verified plea, unless the truth of such
matters appears of record. (7) Tex. R. Civ. P. 90, 93(2); Pledger v. Schoelkopf, 762 S.W.2d 145,
146 (Tex. 1988). 

 Although Elaine filed a verified plea in abatement, she did not contest Edward's
capacity, but asserted instead that Edward lacked standing to assert Mrs. Badouh's claims. Even
if we liberally construe Elaine's plea in abatement as contesting Edward's right to maintain the
action in a representative capacity for Mrs. Badouh, the record does not reflect that the trial court
ruled on the plea. (8) If a party does not specifically point out in writing a defect in pleading and
obtain a ruling, the party is deemed to have waived the complaint. Tex. R. Civ. P. 90; Tex. R.
App. P. 52(a); Vestal v. Jackson, 598 S.W.2d 724, 725 (Tex. Civ. App.--Waco 1980, no writ)
(appellate court may not consider complaint regarding trial court's refusal to abate action where
record does not reflect trial court's action on plea in abatement). Because Elaine waived her
complaint regarding Edward's right to sue in a representative capacity, we overrule her first point
of error. 




ATTORNEY'S FEES


 In her second point of error, Elaine contends the trial court abused its discretion
by awarding Edward attorney's fees under section 37.009 of the Uniform Declaratory Judgments
Act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986). She argues that the
declaratory judgment setting aside the "declaration of guardian" was improper because the issues
raised in that claim were already pending in the guardianship proceeding. Elaine asserts that
Edward joined the claim for declaratory relief to the claim for breach of fiduciary duty merely to
secure an award of attorney's fees. (9) 

 Generally, the Uniform Declaratory Judgments Act is not available to settle
disputes already pending before the court. BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 841
(Tex. 1990); Texas Liquor Control Bd. v. Canyon Creek Land Corp., 456 S.W.2d 891, 895 (Tex.
1970). Texas courts apply this rule whether the claim for declaratory relief is asserted in a
separate proceeding or in the same proceeding. HECI Exploration Co. v. Clajon Gas Co., 843
S.W.2d 622, 639 (Tex. App.--Austin 1992, writ denied). A party may not couple a claim for
declaratory relief with a damage action merely to recover attorney's fees. Hartford Casualty Ins.
Co. v. Budget Rent-A-Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.--Dallas 1990, writ denied);
see also HECI Exploration Co., 843 S.W.2d at 639 (holding impermissible declaratory judgment
counterclaim that presented no new controversies but served only as vehicle for recovery of
attorney's fees). 

 In order to preserve this complaint for appeal, however, Elaine was obliged to
specially except or otherwise raise the issue and obtain a ruling before the trial court instructed
the jury. See Tex. R. Civ. P. 90; Tex. R. App. P. 52(a); see also HECI Exploration Co., 843
S.W.2d at 638; Hudspeth v. Hudspeth, 756 S.W.2d 29, 34 (Tex. App.--San Antonio 1988, writ
denied). (10) Although Elaine objected to Edward's claims for declaratory relief by way of a plea
in abatement and special exceptions, the record does not reflect that she obtained a ruling from
the trial judge. She has waived the complaint. 

 Elaine also asserts, in conclusory fashion, that the declaratory judgment action to
set aside the living will and durable power of attorney amounted to a suit for an advisory opinion
because the claims involved only a "hypothetical future dispute based upon the occurrence of a
future hypothetical event." Elaine fails to present any argument or cite any authority regarding
this assertion. She has thus waived it for appellate review. See Tex. R. App. P. 74(f); Toungate
v. Bastrop Indep. Sch. Dist., 842 S.W.2d 823, 828 (Tex. App.--Austin 1992, no writ). 

 Elaine also contends Edward is not entitled to recover attorney's fees from Elaine
because no controversy existed between Edward and Elaine and Edward did not prevail on the
declaratory judgment claims. Elaine argues the jury failed to find that any wrongful act or
omission on her part caused Mrs. Badouh to execute the three documents. 

 Section 37.009 of the Declaratory Judgments Act provides, "In any proceeding
under this chapter, the court may award costs and reasonable and necessary attorney's fees as are
equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986) (emphasis added). 
An award or denial of attorney's fees in a declaratory judgment action lies within the discretion
of the trial court. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985). We will not reverse
the trial court's judgment absent a clear showing that the court abused its discretion. Id. 

 As noted above, Elaine concedes that Edward asserted Mrs. Badouh's causes of
action as her representative. It is therefore irrelevant that no controversy existed between Elaine
and Edward, in his individual capacity. Moreover, the jury found Mrs. Badouh was incompetent
at the time she executed the "declaration of guardian," and the trial court rendered judgment
declaring that instrument a nullity. Although the jury failed to find Elaine acted wrongfully in
obtaining Mrs. Badouh's signature on the "declaration of guardian," Elaine unquestionably
opposed Edward's successful effort to set it aside, and was thus an adverse party. Cf.
Hohenberger v. Schnitzer, 235 S.W.2d 466, 469 (Tex. Civ. App.--San Antonio 1950, writ ref'd
n.r.e.) (appellant was adverse party for purposes of taxing costs because he opposed judgment
favorable to appellee). We conclude the trial court did not abuse its discretion in awarding
Edward judgment against Elaine for attorney's fees. We overrule Elaine's second point of error.



SUFFICIENCY OF THE EVIDENCE


 In her fourth and sixth points of error, Elaine contends the evidence was legally
or factually insufficient to support the jury's responses to Question No. 10 and Question No. 11. 
In Question No. 10, the jury found Elaine breached a fiduciary duty by taking from Mrs.
Badouh's bank accounts money that Elaine paid to herself, her sons, and third parties. (11) In
Question No. 11, the jury determined that Elaine had taken $157,501.50 in breach of her fiduciary
duties. (12) 

 In reviewing a challenge to the legal sufficiency of the evidence, we must consider
only the evidence and inferences that tend to support the finding, and disregard all evidence and
inferences to the contrary. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992); Stafford v.
Stafford, 726 S.W.2d 14, 16 (Tex. 1987); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). 
If there is any evidence of probative force to support the finding, we must overrule the point and
uphold the finding. In re King's Estate, 244 S.W.2d at 661. 

 In reviewing a factual sufficiency point, we must consider and weigh all of the
evidence that supports and that is contrary to the jury's finding. Sosa v. City of Balch Springs,
772 S.W.2d 71, 72 (Tex. 1989); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). We may
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per
curiam); In re King's Estate, 244 S.W.2d at 661.

 In connection with Question No. 10, the trial court instructed the jury as follows: 



 A "fiduciary" is any person who occupies a position of special confidence
towards another. A fiduciary relationship exists between the person exercising and
the person granting a power of attorney. In such case, the person exercising a
power of attorney on behalf of another is a fiduciary who consents as a matter of
law to have her conduct toward the other measured by a much higher standard than
with respect to persons in a merely arms length transaction. A fiduciary has a duty
to make full disclosure of all material facts known to the fiduciary relating to a
transaction, and may not profit at the expense of the person owed a fiduciary duty. 
A person breaches fiduciary duties if she fails to disclose material relating to the
transaction or when she enters into an unfair transaction with the person to whom
she owes a fiduciary duty. A breach of duty arising from the fiduciary relationship
constitutes fraud even though it does not involve dishonesty of purpose or intent to
deceive.



(Emphasis added.) We will summarize below the evidence relevant to the issue of whether Elaine
breached a fiduciary duty to Mrs. Badouh in light of the trial court's instructions.



Review of the Evidence


 Carter Casteel, an attorney, testified she had known the Badouh family for twenty
years and had drawn wills for Mr. and Mrs. Badouh. After Mr. Badouh died, Elaine instructed
Casteel to prepare a codicil to Mrs. Badouh's will which would not deduct any lifetime gifts to
Elaine from her inheritance, but would deduct gifts to Edward's son from Edward's share of the
estate. Casteel instead prepared the codicil in accord with Mrs. Badouh's different instructions. 
When Elaine and Mrs. Badouh came to the office for execution of the codicil, Elaine said to her
mother, "That's not what we talked about. That's not what you told me you wanted." She also
testified that Elaine completely controlled her mother and was very demanding and manipulative;
moreover, Mrs. Badouh had deteriorated physically over the last years, and seemed frail. 

 Edward testified as follows: Elaine is very domineering and forceful, she screams
at her mother and browbeats her; Elaine sent her two adult sons $900 per month each and paid
their health and car insurance from Mrs. Badouh's funds; Edward's mother signed numerous
documents because Elaine wanted her to do so; after Mrs. Badouh executed a power of attorney
giving Elaine sole authority, Mrs. Badouh's estate was rapidly depleted; Elaine spent some
$300,000 on herself and her sons in the past four years; Mrs. Badouh has no money in the bank;
and less than half the $700,000 deposited in Mrs. Badouh's account was spent on her care. Edward stated further that Elaine paid herself $500 per week from Mrs. Badouh's
account for taking care of the latter's affairs. He testified that Elaine made several expenditures
from the account for Elaine's own benefit and that of her sons: $3,300 for a trip to France;
$6,000 for plastic surgery on her son's nose; and $21,000 for a failed business venture begun by
Elaine and her son. Elaine paid all her bills and living expenses from her mother's account. 
Edward managed his mother's financial affairs until May 1991. During that period, Elaine would
pick up five or six blank checks at a time and overdraw the account, leaving no money to pay
Mrs. Badouh's household staff. 

 On cross examination, Edward admitted he owes his mother $17,000 and $30,000,
evidenced by his promissory notes. He admitted he and Elaine dispute whether he or his father's
estate owned certain assets. He conceded that when he managed Mrs. Badouh's money before
May 1991, his mother agreed to give Elaine $2,000 to $2,300 per month. He stated Elaine has
paid $118,000 to attorneys from his mother's account. When Elaine recently sold some of Mrs.
Badouh's corporate stock for $60,000 in cash, $45,000 was spent within a week. Several
of Mrs. Badouh's caretakers testified. Myrtle Josey stated Elaine frequently yelled at and tried
to "rule" Mrs. Badouh, and that Mrs. Badouh was nervous and shaky when Elaine came to visit. 


 Erlinda Dominguez testified that she overheard Elaine telling her mother that she
should put money in Elaine's name, so if Mrs. Badouh died Elaine would not be left out; Elaine
later received $110,000 from Mrs. Badouh. Elaine frequently argued and demanded things from
her mother. Edward left cash, for Mrs. Badouh's needs, in her wallet. Elaine got Dominguez
to take the cash from Mrs. Badouh's wallet and deposit it in Elaine's own account. Elaine would
fill out blank checks she had picked up from Edward, cash the checks, and deposit the cash in her
own account. Dominguez also testified that Elaine often shouted at her mother and demanded
things, and that Mrs. Badouh became nervous when Elaine visited.

 Marisol Garcia testified she saw Elaine upset only once with her mother--after
Edward had visited. Elaine cares for her mother, but she also controlled her when she wanted. 
On cross examination, Garcia admitted Edward lent her money because Elaine gave her a
postdated check; she also admitted that he pressured her to testify.

 Maria D. Billiot testified she had never seen Elaine dominate Mrs. Badouh, and
she saw Elaine yell at her mother only once--after Edward visited. Billiot never saw Mrs. Badouh
unhappy or upset after Elaine's visits. Elaine told Mrs. Badouh that Edward would "leave [Mrs.
Badouh] dry" and put her in a nursing home. 

 Helen Eversberg, a Badouh-family friend, testified Elaine had told her she was
angry at her parents for not giving her the money she was entitled to, and she vowed to get her
share no matter how long it took.

 Jan Johec, a certified public accountant, testified she had reviewed Mrs. Badouh's
bank statements and cancelled checks for the period January 1988 through June 1992. Johec
testified to the following figures regarding the relevant period: (1) Mrs. Badouh's gross receipts
were $716,622; (2) Mrs. Badouh's living expenses were $355,136; (3) payments to accountants
and attorneys totalled $118,709; and (4) expenditures benefitting Elaine and her sons were
$294,441. She testified there was a "deficit" of $51,664. If there had been no expenditures for
Elaine or attorneys, Mrs Badouh's balance would have been $251,236. Johec projected Mrs.
Badouh would not have enough money to last through 1994. Johec categorized checks made out
to "cash" (a total of $66,000) as Mrs. Badouh's living expenses, but if Elaine spent that money
on herself, it would increase the total amount benefitting Elaine. None of the household help was
paid $2,000 per month.

 On cross examination, Johec admitted she did not know if the money paid to
attorneys and accountants was for Elaine's benefit or Mrs. Badouh's. She agreed that if Elaine
paid herself a salary for providing nursing care to her mother, the portion designated as amounts
spent for Mrs. Badouh's benefit would be larger. She stated that her projections do not
necessarily match up to cash in the bank, and that if Mrs. Badouh lives long enough for certain
loan repayments to come in, she would not be broke after all.

 Alicia Bayona, one of Mrs. Badouh's caretakers, testified that Elaine never upsets
Mrs. Badouh. Elaine loves her mother, and she has never seen Elaine lose her temper with her
mother. Mrs. Badouh is a strong-willed person who is not influenced by anything. 

 Sue Ragusa, Mrs. Badouh's friend, testified that Mrs. Badouh has a strong will,
and that Elaine and Mrs. Badouh get along like any mother and daughter. She has never seen
Elaine pressure her mother or be cross with her.

 Christine Whitehorse testified she was Mrs. Badouh's paid companion, secretary
and "girl Friday" for several years. She said Elaine used blank checks for household purposes,
and she never saw Elaine negotiate any blank checks without Mrs. Badouh's knowledge. Mrs.
Badouh initiated the expenditure of money on Elaine's sons. Whitehorse never saw Elaine
pressure her mother to do something against her will. 

 Whitehorse testified Edward was concerned about the amount of money Mrs.
Badouh allowed Elaine to spend, and told his mother that if it did not stop, Mrs. Badouh would
run out of money. Mrs. Badouh replied it was her money, and she could do what she wanted with
it. Mrs. Badouh wanted to send Elaine to France and give money to Elaine's sons. Elaine never
told Mrs. Badouh to slow down on her spending. It seemed as though Mrs. Badouh's money was
spent half on Mrs. Badouh, and half on Elaine and her sons. The principal source of income for
Elaine's sons has been Mrs. Badouh's money. In Whitehorse's view, Mrs. Badouh gives Elaine
money to control her.

 Elaine testified her father wanted to pay for her sons' education, and her mother
paid for her younger son's undergraduate education. She and her son borrowed $21,000 from her
mother to start a business, and she has repaid that money. She spent $1,800 on the trip to France. 
She stated she had no authority to sign checks until June 1991, when she and her mother put her
mother's bank account in both their names. There was a previous power of attorney in 1988
authorizing both Elaine and Edward to act for Mrs. Badouh. She testified her older son received
$750 per month when her father was alive, and this was increased to $900 per month. Mrs.
Badouh paid tuition for all of Elaine's sons, given them $900 per month each, and paid their car
and medical insurance. In addition, Mrs. Badouh paid $5,700 of Elaine's legal fees, but Elaine
will pay the rest. Elaine received $2,350 per month from her mother through 1990, and in 1991
began taking $500 per week for handling her mother's affairs and doing some nursing. Elaine
disagreed that her mother would be destitute by 1994. She felt Edward should have kept better
control of the checks when he did the books. Elaine admitted that if she had known the full
financial picture, she would have cut back on spending.

 In addition to the testimony summarized above, there was an exhibit listing
information about each check written on Mrs. Badouh's bank accounts, including the date,
amount, purpose, for whose benefit, and, for one bank account, the person signing the checks.

 Based on the foregoing summary of the evidence, we conclude the record contains
legally and factually sufficient evidence to support the jury's finding that Elaine breached her
fiduciary duty to Mrs. Badouh. 

 Elaine argues there is no evidence from which the jury could have computed the
sum of $157,501.50 in response to Question No. 11, because the only evidence on the issue was
Johec's conclusion that Elaine spent $294,441 on herself and her sons. Contrary to Elaine's
assertion, there was an exhibit listing individually each check written on Mrs. Badouh's account. 
The record reflects that during deliberations the jury requested a calculator. 

 As a general rule, a reviewing court will not interfere with a jury's determination
of the amount of damages if there is any probative evidence to sustain the award. David McDavid
Pontiac, Inc. v. Nix, 681 S.W.2d 831, 837 (Tex. App.--Dallas 1984, writ ref'd n.r.e.). There
need only be some evidence that substantial loss occurred that forms a basis for the jury to
estimate the amount of loss. See Carrow v. Bayliner Marine Corp., 781 S.W.2d 691, 695 (Tex.
App.--Austin 1989, no writ). Evidence corresponding to the exact amount the jury found is not
essential. Id. Although the process by which the jury arrived at the figure of $157,501.50 is
unclear, we conclude the evidence is legally and factually sufficient to support the award. We
overrule Elaine's fourth and sixth points of error.


SUBMISSION OF JURY QUESTIONS


 In her third and fifth points of error, Elaine asserts there was legally or factually
insufficient evidence to support submitting Question No. 10 and Question No. 11 to the jury. 
Specifically, she complains that the questions incorrectly required the jury to evaluate Elaine's
conduct beginning January 1, 1988. Elaine contends she owed Mrs. Badouh no fiduciary duty
before September 18, 1990, the date Mrs. Badouh executed the durable power of attorney. She
argues further that undisputed evidence establishes she had no knowledge of her appointment until
ten months following the date Mrs. Badouh appointed her.

 First, we note that Elaine did not object at trial that Question No. 10 and Question
No. 11 incorrectly instructed the jury concerning the date from which they must evaluate whether
Elaine breached a fiduciary duty. Thus, she has not preserved this complaint for appeal. See
Tex. R. Civ. P. 274; Tex. R. App. P. 52(a). 

 Moreover, Elaine herself testified that Mrs. Badouh had appointed both Elaine and
Edward in 1988 under an earlier power of attorney. Further, Elaine's signature appears on the
durable power of attorney that Mrs. Badouh executed September 18, 1990, and thus Elaine's
assertion that she did not know of her appointment until ten months later is contrary to the
evidence.

 We overrule Elaine's third and fifth points of error.



ATTORNEY AD LITEM FEES


 In her seventh point of error, Elaine asserts the trial court erred in taxing the
attorney ad litem's (13) fees against her. She argues the award is erroneous because the parties did
not stipulate to the reasonableness of the fee, the trial court did not submit the issue to the trier
of fact, and there was no evidence that the fees were reasonable. 

 In its final judgment, the trial court awarded the attorney ad litem a total fee of
$17,000, taxing $10,500 against Mrs. Badouh's estate, and the remaining $6,500 against Elaine. (14) 
Former section 113A of the Probate Code, in effect at the time of trial, provided: 



 In a proceeding under the provisions of this chapter for the appointment of a
guardian, the judge shall appoint an attorney ad litem to represent the interests of
the person for whom the permanent guardianship is sought and shall allow the
attorney ad litem a reasonable fee for his services to be taxed as part of the costs.



Act of May 23, 1989, 71st Leg., R.S., ch. 1261, § 1, 1989 Tex. Gen. Laws 5082 (Tex. Prob.
Code Ann. § 113A, since repealed). 

 The allowance, amount, and taxing of an attorney ad litem fee are matters within
the sound discretion of the trial court. Lofton v. Norman, 508 S.W.2d 915, 922 (Tex. Civ.
App.--Corpus Christi 1974, writ ref'd n.r.e.). The trial court's decision will not be disturbed
unless a clear abuse of discretion is apparent from the record. Simon v. York Crane & Rigging
Co., 739 S.W.2d 793, 794 (Tex. 1987); Dover Elevator Co. v. Servellon, 812 S.W.2d 366, 368
(Tex. App.--Dallas 1991, no writ); Smith v. Smith, 720 S.W.2d 586, 591 (Tex. App.--Houston [1st
Dist.] 1986, no writ). The burden of proof rests upon the party asserting that the trial court
abused its discretion; the abuse must be shown affirmatively. Navistar Int'l Corp. v. Valles, 740
S.W.2d 4, 6 (Tex. App.--El Paso 1987, no writ). 

 Elaine does not argue that the amount of the fee is unreasonable, but instead asserts
there was no showing that it was reasonable. No evidence is required to support an award of
attorney's fees to a guardian ad litem or an attorney ad litem. Dover Elevator Co., 812 S.W.2d
at 368; Alford v. Whaley, 794 S.W.2d 920, 925 (Tex. App.--Houston [1st Dist.] 1990, no writ);
Smith, 720 S.W.2d at 591; Transport Ins. Co. v. Liggins, 625 S.W.2d 780, 785 (Tex. App.--Fort
Worth 1981, writ ref'd n.r.e.). (15) The attorney ad litem submitted detailed time logs in which he
described 83.8 hours of work and requested compensation at the rate of $100 per hour for a total
of $8,380. The trial court awarded him $6,500. None of the parties requested an evidentiary
hearing on the reasonableness of the award. (16) We conclude Elaine has not shown the trial court
abused its discretion in setting the fee at $6,500. 

 Elaine also asserts the trial court abused its discretion by taxing against her the fees
and expenses of the attorney ad litem. She argues that costs should be taxed against the
unsuccessful party or against the estate of the individual the attorney ad litem represents. 

 The successful party to a suit shall recover of his adversary all costs incurred
therein. Tex. R. Civ. P. 131. Generally, attorney ad litem fees are taxable against the losing
party. Aldine Indep. Sch. Dist. v. Moore, 694 S.W.2d 454, 455 (Tex. App.--Houston [1st Dist.]
1985, no writ); see also Clark v. McFerrin, 760 S.W.2d 822, 828 (Tex. App.--Corpus Christi
1988, writ denied) (trial court did not abuse discretion in taxing ad litem fees against appellants
because appellees were successful parties to suit); Hill v. Robinson, 592 S.W.2d 376, 385 (Tex.
Civ. App.--Tyler 1979, writ ref'd n.r.e.) (appellees, as successful parties, had right to recover
costs, and thus trial court did not abuse discretion in taxing ad litem fees against appellants). The
trial court taxed a much larger portion of the ad litem fees against Mrs. Badouh's estate. We fail
to see how the trial court abused its discretion in assessing less than half of the attorney ad litem
fees against Elaine. (17) We overrule Elaine's seventh point of error.



ADMISSION OF APPLICANT'S EXHIBITS


 In her eighth point of error, Elaine asserts the trial court erred in admitting into
evidence Edward's exhibits numbered thirty through thirty-three. These exhibits were prepared
by Edward's expert witness Jan Johec, an accountant, and consisted of summaries of Mrs.
Badouh's financial records and Johec's projections and conclusions regarding Mrs. Badouh's
present and future financial condition. (18) At trial, Elaine objected to the admission of these exhibits
on the ground that Edward had not provided them in supplementation to previous discovery
requests. (19) See Tex. R. Civ. P. 166b(6); 215(5).

 A party who fails timely to supplement a response to a discovery request is not
entitled to present the undisclosed evidence unless the trial court finds that good cause exists for
his failure. See Tex. R. Civ. P. 166b(6), 215(5); James v. Texas Dep't of Human Servs., 836
S.W.2d 236, 241 (Tex. App.--Texarkana 1992, no writ). Absence of surprise or unfairness does
not in itself satisfy the good cause exception. Sharp v. Broadway Nat'l Bank, 784 S.W.2d 669,
671 (Tex. 1990). The burden of establishing good cause lies on the party offering the evidence. 
Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 395 (Tex. 1989); James, 836 S.W.2d at 241. 
The trial court's determination of good cause is subject to review only for abuse of discretion. 
Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298 (Tex. 1986); Texas Dep't of Human Serv. v.
Green, 855 S.W.2d 136, 147 (Tex. App.--Austin 1993, writ denied).

 At trial, Edward's counsel stated he had not received the report from Johec until
August 5th, and that he provided it to Elaine's counsel the following day. Johec confirmed to the
court that she provided the report to counsel about that time. Apparently, Elaine's deposition was
rescheduled at her request for July 22nd, nineteen days before trial, at which time Edward's
counsel was able to question her about the underlying documentation for Johec's report. Based
on the record, we cannot say that the trial court abused its discretion in admitting Johec's reports. 
See First Interstate Bank v. Bland, 810 S.W.2d 277, 288 (Tex. App.--Fort Worth 1991, no writ)
(holding trial court did not abuse its discretion in finding good cause to admit photographs that
had not been taken and developed until trial). 

 Moreover, we note the information contained in Johec's reports and charts was
essentially cumulative of other testimony and exhibits properly admitted. Specifically, we refer
to Johec's testimony, summarized above, and to Edward's Exhibit 29, which listed each check
written on Mrs. Badouh's bank accounts, including the amount, purpose, and for whom the money
was spent, as well as listing deposits. Thus, even if the trial court erroneously admitted the
exhibits, the error was harmless. See Rainbo Baking Co. v. Stafford, 787 S.W.2d 41, 42 (Tex.
1990) (holding that because improperly admitted testimony was cumulative it did not cause
rendition of improper judgment); Gee, 765 S.W.2d at 396 (stating erroneous admission of
evidence cumulative of properly admitted evidence is harmless error); Blonstein v. Blonstein, 831
S.W.2d 468, 472-73 (Tex. App.--Houston [14th Dist.]), writ denied, 848 S.W.2d 82 (Tex. 1992)
(stating admission of expert's charts that were a summary of previous witnesses' testimony was
harmless error). We overrule Elaine's eighth point of error. 

SETTLEMENT OF THE BEXAR COUNTY LAWSUIT (20)


 After the trial court rendered judgment appointing Kimbel Brown guardian of Mrs.
Badouh's estate, Brown filed an application for settlement of claims and sale of personal property
in Comal County Court. See Tex. Prob. Code Ann. §§ 342, 234. Brown requested the court's
permission to: (1) settle a lawsuit pending in Bexar County in which Elaine and Mrs. Badouh
were the plaintiffs and Edward was the defendant; and (2) sell certain items of Mrs. Badouh's
personal property. Elaine filed a response opposing both the settlement and the sale. After a
hearing, the court issued its order approving the settlement of the lawsuit and the sale of personal
property. Elaine appeals. 

 In a single point of error, Elaine asserts the guardian's application to settle the
lawsuit was defective and the trial court therefore erred in approving it. (21) She argues that the
application was within the scope of section 334 of the Probate Code (22) governing the sale of
personal property, and was therefore deficient in the following respects: (1) the application was
not accompanied by a proper exhibit showing the condition of the estate; and (2) the guardian
failed to post citation. See Tex. Prob. Code Ann. §§ 342, 344 (West 1980). (23)
 Brown rejoins that
a guardian's application to settle a lawsuit is governed by section 234 of the Probate Code, which
provides in part: (24)



 When a personal representative deems it for the interest of the estate, he may,
upon written application to the court, and by order granting authority:


 . . . .


 (4) Make compromises or settlements in relation to property or claims in
dispute or litigation.



Tex. Prob. Code Ann. § 234(a)(4) (West 1980). Brown therefore argues he was not required to
comply with the requirements in sections 342 and 344 for the sale of personal property.

 Elaine contends that settlement of a lawsuit is a sale of personal property because
section 3(z) of the Probate Code provides: "`Personal property' includes interests in . . . choses
in action . . . ." Tex. Prob. Code Ann. § 3(z) (West Supp. 1994). Thus, she argues that
settlement of a lawsuit is the sale of a chose in action. 

 We do not agree with Elaine's contention. A chose in action is a right to bring an
action or a right to recover a debt or money. When a person sells a chose in action, he sells title
to the right, which continues to exist. When parties settle a lawsuit, they release their claims and
no one may assert them; they are extinguished. Thus, section 334 is found in chapter eight, part
five, of the Probate Code, entitled "Sales," whereas section 234 is located in part five of chapter
seven, entitled "General Powers of Personal Representatives."

 Because we conclude that settlement of a lawsuit is not the sale of personal
property, Brown was not required to comply with provisions of the Probate Code pertaining to
the sale of personal property in his application to settle the lawsuit. See San Antonio Sav. Ass'n
v. Palmer, 780 S.W.2d 803, 808 (Tex. App.--San Antonio 1989, writ denied) (transaction within
the scope of Probate Code section 234 not governed by provisions on sale of property); Baldwin
v. Davis Hill Oil Co., 245 S.W.2d 353, 366 (Tex. Civ. App.--Beaumont 1951, writ ref'd n.r.e.)
(construing article 1987 [now § 234] as providing the only procedure for settling claims and
holding statutes on sales inapplicable). We overrule Elaine's point of error. 



CONCLUSION


 Finding no error, we affirm the trial-court judgment in cause number 3-93-070-CV
and the trial-court order in cause number 3-93-439-CV.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Affirmed on Both Causes

Filed: October 12, 1994

Do Not Publish
1. Act of Mar. 17, 1955, 54th Leg., R.S., ch. 55, § 113, 1955
Tex. Gen. Laws 123 (Tex. Prob. Code Ann. § 113, since repealed)
("section 113"). 
2. The version of section 11 of the Probate Code in effect at
the time of trial stated in part: "A proceeding for the
appointment of a guardian shall be begun by written application
filed in the court of the county having venue thereof. Any person
may make such application."
3. Additionally, the trial court declared the durable power of
attorney null and void and of no further force and effect as of the
date letters of guardianship were issued to Kimbel L. Brown. 
4. The guardian of Mrs. Badouh's estate, Kimbel Brown, is also
an appellee. He filed a brief that is almost identical to Edward's
brief. 
5. In her brief, Elaine states: "From these pleadings, it is
clear that Edward does not bring any of his causes of action . . .
in his own behalf, but rather, brings these causes of action on
behalf of Mrs. Badouh, who prior to the date of judgment is
presumed to be competent to manage her own affairs. . . . At no
time during the proceedings has Edward asserted that these actions
are brought in his own capacity . . . ."
6. Elaine argues that this case is similar to Cozad v. Roman,
570 S.W.2d 558 (Tex. Civ. App.--Corpus Christi 1978, no writ). In
Cozad, the court held that the appellant had no standing because
she had no personal interest at stake, and yet expressly asserted
that she brought suit in her individual capacity, and not as a
representative for her mother. Id. at 561. In the present case,
the parties do not dispute that Edward brought the suit in a
representative capacity.
7. A party may challenge lack of capacity to sue by special
exception if such defect appears on the face of the petition. 2
Texas Civil Practice, supra § 9:13, at 313.
8. The record contains an order setting the plea in abatement
for hearing on July 10, 1992, but contains no written order or
statement of facts indicating that the trial court actually held
the hearing and ruled on the plea. Elaine also filed special
exceptions raising the issue of standing, but once again, although
the trial court set a hearing date, there is no indication that the
trial court ruled on the special exceptions.
9. A party may not recover attorney's fees absent statutory
authorization or an agreement between the parties. Dallas Cent.
Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992). 
Edward was entitled to recover attorney's fees solely for the cause
of action under section 37.009 of the Declaratory Judgments Act. 
Generally, when a party seeks to recover attorney's fees in a case
involving multiple causes of action, the party is required to
segregate among the various causes its request for fees. Great Am.
Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 850 S.W.2d 285,
290 (Tex. App.--Austin 1993, writ requested). Elaine does not
complain on appeal, nor did she object in the trial court, that
Edward failed to segregate his claim for attorney's fees between
the various causes of action. See Aero Energy, Inc. v. Circle C
Drilling Co., 699 S.W.2d 821, 823 (Tex. 1985); Murrco Agency, Inc.
v. Ryan, 800 S.W.2d 600, 606 (Tex. App.--Dallas 1990, no writ). 
 
10. In a non-jury case, the party must raise the issue before
the trial court signs the judgment. Tex. R. Civ. P. 90.
11. Question No. 10 asked: "Do you find from a preponderance
of the evidence that Elaine Badouh Hale after January 1, 1988
breached a fiduciary duty to Mrs. Rubylien Barber Badouh by taking
for herself, her sons and third parties money from Mrs. Rubylien
Barber Badouh's bank accounts?"
12. Question No. 11 asked: "What amount of money, if any, do
you find that Elaine Badouh Hale, after January 1, 1988 took for
herself, her sons and third parties in violation of fiduciary
duties owed to Mrs. Rubylien Barber Badouh?"
13. The order appointing Kimbel Brown is entitled, "Order
Appointing Attorney Ad Litem," although the text of the order
states that Kimbel Brown is appointed as guardian ad litem. An
attorney ad litem is an attorney appointed by the court to
represent and advocate on behalf of a proposed ward, while a
guardian ad litem is a person appointed by the court to represent
the best interests of a person in a guardianship proceeding. Tex.
Prob. Code Ann. § 601(1), (9) (West Supp. 1994); see also Dawson v.
Garcia, 666 S.W.2d 254, 265 (Tex. App.--Dallas 1989, no writ)
(noting guardian ad litem is not an attorney for represented
person). None of the parties assign the confusion of terms in the
trial-court order as error, and in any event, an improper
designation by the trial court is not fatal. See Phillips
Petroleum Co. v. Welch, 702 S.W.2d 672, 674 (Tex. App.--Houston
[14th Dist.] 1985, writ ref'd n.r.e.); Sheehan v. Southern Pac.
Co., 422 S.W.2d 948, 949 (Tex. Civ. App.--Houston [1st Dist.] 1967,
writ ref'd n.r.e.). Moreover, in connection with assessment and
taxing of ad litem fees, the rules are the same whether the
representative is a guardian ad litem or attorney ad litem. See,
e.g., Dover Elevator Co. v. Servellon, 812 S.W.2d 366, 368 (Tex.
App.--Dallas 1991, no writ) (finding trial court's decision
regarding reasonable compensation for guardian ad litem within its
discretion); Lofton v. Norman, 508 S.W.2d 915, 922 (Tex. Civ.
App.--Corpus Christi 1974, writ ref'd n.r.e.) (finding award of
attorney ad litem fee within sound discretion of trial court). 
 
14. The attorney ad litem filed two motions requesting an award
of attorney's fees. The trial court granted the first motion in
June 1992, awarding $6,500, and the second motion in October 1992,
awarding $10,500. In its final judgment, the trial court taxed the
attorney ad litem's fee through June 9th against Elaine, and the
amounts awarded for work after June 9th against Mrs. Badouh's
estate.
15. At least one court does not agree that no evidence is
required to support an award of ad litem fees. See Brown & Root
U.S.A., Inc. v. Trevino, 802 S.W.2d 13, 14 (Tex. App.--El Paso 1990,
nor writ) (stating attorney ad litem fee is question of fact to be
determined by the trier of facts and competent evidence must
support award). Moreover, in Alford, the court noted that no
evidence is required to support an ad litem fee award, but because
the parties did present evidence, the court reviewed the evidence
and held the trial court had abused its discretion and reduced the
award to the ad litem. Alford, 794 S.W.2d at 925-26.
16. A hearing on a motion for new trial is an appropriate forum
to develop evidence regarding the reasonableness of the attorney ad
litem fee. See Simon, 739 S.W.2d at 794; Navistar, 740 S.W.2d at
6. Although Elaine asserted that the evidence was legally and
factually insufficient to support the amount of the award in her
amended motion for new trial, she did not request a hearing on the
motion.

 
17. Elaine also argues that the trial court did not state good
cause for apportioning the ad litem fees against her. The trial
court may adjudge costs other than in accordance with rule 131 for
good cause stated on the record. Tex. R. Civ. P. 141. It is error
for the trial court to tax costs other than in accordance with rule
131 unless it states its reasons on the record. Neal v. Ardoin,
594 S.W.2d 145, 147 (Tex. Civ. App.--Houston [1st Dist.] 1980, no
writ). However, because Elaine was not a successful party, the
trial court did not act outside the dictates of rule 131. 
18. Exhibit 30 is a six-page historical recapitulation of Mrs.
Badouh's financial activity by year, based on her financial
records. Johec calculated the figures for 1988, 1989, 1990, 1991,
and the first six months of 1992 for the following categories: (1)
Mrs. Badouh's gross receipts; (2) Mrs. Badouh's living expenses;
(3) cash for expenses; (4) fees for attorneys and accountants; (5)
expenditures for Elaine and her children; and (6) Mrs. Badouh's
overhead expenses. Additionally, Johec calculated Mrs. Badouh's
historical cash flow by year in certain categories, such as living
expenses. There is a projected income assumption. Johec also
calculated Mrs. Badouh's personal expenses and her actual cash
available, and provided a summary of her conclusions concerning how
much was spent for the entire time period in various categories. 
Exhibits 31 through 33 are large charts or diagrams of information
contained in Exhibit 30.
19. We do not find the request for production in the record;
however, Edward does not dispute that Elaine requested production
of the documents and that he did not produce them until August 6,
1992. Trial began on August 10th. The supplementation deadline
was 30 days before trial. See Tex. R. Civ. P. 166b(6).
20. This is an appeal from a companion case involving Elaine
Badouh Hale and Kimbel Brown, whom the trial court appointed as the
guardian of Mrs. Badouh's estate. 
21. Elaine does not appeal the portion of the order approving
the sale of Mrs. Badouh's personal property. After the court
issued its order, Brown filed a report of sale, to which Elaine
again objected for the failure to post notice in accordance in
section 344 of the Probate Code. In response, Brown filed an
amended supplemental application for sale of personal property, and
the clerk posted notice for ten days in accordance with section
344. Elaine filed no objections or response. 
22. Section 334 provides: 


 

 Upon application by the personal
representative of the estate or by any interested
person, the court may order the sale of any
personal property of the estate . . . if the court
finds that so to do would be in the best interest
of the estate . . . . In so far as possible,
applications and orders for the sale of personal
property shall conform to the requirements
hereinafter set forth for applications and orders
for the sale of real estate. 


Tex. Prob. Code Ann. § 334 (West 1980). 
23. Although sections 342 and 344 of the Probate Code pertain
to applications for the sale of real estate, applications and
orders for the sale of personal property shall conform to the
requirements set forth for the sale of real estate. Tex. Prob.
Code Ann. § 334 (West 1980). 

24. The trial court found that the application for approval of
the sale of personal property was separate and distinct from the
court's approval to settle the lawsuit.