**George HERNANDEZ, Appellant,**

**v.**

**Maria Guadalupe LOPEZ (Hernandez) and The Office of the Attorney General of Texas, Appellees.**

No. 01–06–00901–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 26, 2009.

Shari Goldsberry, Laird Valdez, San Leon, TX, Stacey Holley Valdez, Laird, Harris, Goldsberry, Tarlow & Valdez, LLP, Houston, TX, for Appellant.

Michael D. Becker, Assistant Attorney General, John B. Worley, Assistant Attorney General, Rande K. Herrell, Assistant Attorney General, Austin, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION ON REHEARING

LAURA CARTER HIGLEY, Justice.

Appellant, George Hernandez, appeals from a judgment nunc pro tunc granted in favor of appellee, the Office of the Attorney General of Texas ("the OAG"), in which the trial court modified the arrearage in a child support enforcement order.

In what we construe as one issue, George contends that the trial court erred by granting the OAG's motion for judgment nunc pro tunc because the evidence is insufficient to support the trial court's implied finding that the agreed order contained a clerical error.

On August 28, 2008, we vacated the trial's court's judgment nunc pro tunc, leaving intact the trial court's original judgment of January 27, 2004. The OAG moved for rehearing. We deny the motion, but withdraw the opinion dated August 28, 2008, and issue this opinion in its stead. Our disposition and judgment remain unchanged.

We vacate the judgment nunc pro tunc.

### Facts and Procedural History

On May 16, 1986, a child, C.L.H., was born to George and appellee, Maria Guadalupe Lopez (formerly, Hernandez). In 1992, George was ordered to begin paying $260 in monthly child support for C.L.H. Thereafter, George failed to make certain child support payments.

On January 21, 2004, a child-support enforcement hearing was held before a master. There is not a record of that hearing before us in this appeal. However, the record shows that George, Maria, and the OAG signed an "Agreed Order Enforcing Child Support Obligation" ("Agreed Order").

The Agreed Order contains a judgment on arrears, which states, "The Court FINDS and CONFIRMS that [George] is in arrears in the amount of $51,000.00 as of December 31, 2004." (Bold emphasis added.) On January 27, 2004, the trial court signed an order adopting the master's report and the Agreed Order. There is not a record of any hearing at the time the trial court signed the order before us in this appeal.

Over two years later, on April 11, 2006, the OAG filed a motion for judgment nunc pro tunc, alleging that the Agreed Order contained a clerical error in the date that the arrearage was confirmed. Specifically,

the OAG alleged that the date of December 31, 2004 stated in the Agreed Order should have been December 31, **2003**. In addition, the OAG filed a "Motion to Confirm Child Support Arrearage," alleging that George had failed to pay the sum in arrears. The OAG appended to its motion an accounting statement from the OAG stating that appellant owed $51,000 as of December 31, 2003.

On August 22, 2006, a hearing was held on the motion for judgment nunc pro tunc. The OAG presented the testimony of Maria as its evidence that the date of December 31, 2004 had been incorrectly entered. Maria testified, as follows, in relevant part:

Q. Did you approach the judge with the Attorney General and your ex?

A. I believe so, yes, sir.

Q. Okay. And did you-all recite your agreement into the record?

A. Yes, sir.

Q. And was it agreed upon and stipulated on the record that the arrears as of December 31st, 2003 were $51,000?

A. Yes, sir.

Q. Was there any testimony on the record—Was there any testimony that the agreement was 2004?

A. No, sir.

On cross-examination, Maria testified that she could not recall the name of the judge or of any of the attorneys involved.

George, who appeared through his counsel, objected to the entry of judgment nunc pro tunc, contending that the requested change of date constituted a substantive change outside the trial court's plenary period. Specifically, George contended that the change of date would result in an extra year of interest and would vitiate the parties agreement that the arrearage be confirmed at $51,000 as of December 31, 2004.

At the close of the hearing, the trial court granted the OAG's motion for judgment nunc pro tunc, ordering that the date of the confirmation of arrearage be changed from December 31, 2004 to December 31, 2003. The trial court explained the basis for its determination as follows:

> The court can observe that I have yet to see a Motion for Nunc Pro Tunc that didn't make a substantive change to the Order. So, I've never found the supposed distinction between clerical and substantive errors to be any help to the Trial Court in determining these issues. They always make some change that affects the substance of the Order. Presumably, nobody would be down here requesting nunc pro tuncs if they didn't; but I think it is permissible for the court to assume that the underlying court would not enter a judgment it had no authority to enter. And given the testimony, the Court is comfortable granting the motion.

This appeal ensued.

### Jurisdiction

■ As a threshold issue, the OAG contends that we do not have jurisdiction to consider this appeal because George's notice of appeal was untimely filed. Specifically, the OAG contends that, because the judgment nunc pro tunc was signed on August 22, 2006, George's notice of appeal was due by September 21, 2006. George filed his notice of appeal on September 22, 2006, however, and did not file a motion for extension of time.

With exceptions not applicable herein, a notice of appeal must be filed within 30 days after the date the judgment is signed. *See* TEX.R.APP. P. 26.1. An appellate court may extend the time to file the notice of appeal, if, within 15 days after the deadline for filing the notice of appeal, the party

files in the trial court the notice of appeal and files in the appellate court a motion complying with rule 10.5(b). *Id.* 26.3. Rule 10.5(b) requires that a motion for extension of time to file a notice of appeal include, inter alia, "the facts relied on to reasonably explain the need for an extension." *Id.* 10.5(b)(2).

■■■ An extension of time is implied when an appellant, acting in good faith, files a notice of appeal beyond the time permitted by Rule 26.1, but before the expiration of the 15–day period in Rule 26.3. *See Hone v. Hanafin,* 104 S.W.3d 884, 885–86 (Tex.2003) (applying *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex.1997)); *Coronado v. Farming Tech., Inc.,* 994 S.W.2d 901, 901 (Tex.App.-Houston [1st Dist.] 1999, no pet.). However, rule 10.5 still requires that an appellant offer a reasonable explanation for her failure to timely file a notice of appeal. TEX.R.APP. P. 10.5(b)(2); *see Hone,* 104 S.W.3d at 886; *Verburgt,* 959 S.W.2d at 617.

Here, the record shows that the judgment nunc pro tunc was signed on August 22, 2006 and therefore George's notice of appeal was due by September 21, 2006. George's notice of appeal, filed on September 22, 2006, was beyond the time permitted by Rule 26.1, but was before the expiration of the 15–day period in Rule 26.3. Because George has also filed a factual explanation indicating that he, in good faith, believed that he filed on time and had inadvertently miscalculated the dates, we imply an extension of time, and we conclude that George's notice of appeal was timely filed. *See Hone,* 104 S.W.3d at 885–86; *Weik v. Second Baptist Church of Houston,* 988 S.W.2d 437, 439 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (stating that "reasonable explanation" means any plausible statement of circumstances indicating that failure to timely file was not deliberate but was the result of inad-

vertence). Hence, our jurisdiction over this appeal is established, and we turn to the merits of the appeal.

## Judgment Nunc Pro Tunc

George contends that the trial court erred by granting the OAG's motion for judgment nunc pro tunc because the evidence is insufficient to support the trial court's implied finding that the agreed order contained a clerical error. Specifically, appellant contends that changing the date confirming appellant's arrearage created an increase in his obligation to pay and therefore constituted a substantive change. Appellant contends that the trial court was without plenary power to make a substantive change to the judgment.

### A. Standard of Review and Applicable Law

Pursuant to Rule 329b(d) of the Texas Rules of Civil Procedure, the trial court has plenary power for 30 days after a judgment is signed to grant a new trial or to vacate, modify, correct, or reform the judgment. TEX.R. CIV. P. 329b(d). Once the trial court's plenary power expires, it cannot set its judgment aside except by a bill of review for sufficient cause. TEX.R. CIV. P. 329b(f). However, the trial court may at any time correct a clerical error in the judgment by entering a judgment nunc pro tunc. TEX.R. CIV. P. 316; 329b(f); *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986); *Barton v. Gillespie,* 178 S.W.3d 121, 126 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

■■■ A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered, and does not arise from judicial reasoning or determination. *Barton,* 178 S.W.3d at 126 (citing *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986)). A judicial error, on the other hand, occurs in the

rendering, as opposed to the entering, of a judgment. *Escobar*, 711 S.W.2d at 231. It arises from a mistake of law or fact that requires judicial reasoning to correct. *Butler. v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

■■■ When deciding whether an error is clerical or judicial, the court must look to the judgment actually rendered and not to the judgment that should or might have been rendered. *Escobar*, 711 S.W.2d at 231. The trial court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* at 231–32. Even if the trial court incorrectly rendered judgment, it cannot alter a written judgment that precisely reflects the incorrect rendition. *Id.* at 232. A judgment rendered to correct a judicial error after plenary power has expired is void. *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973); *Barton*, 178 S.W.3d at 126.

■■■ Whether an error is judicial or clerical is a question of law. *Escobar*, 711 S.W.2d at 232. However, whether the court pronounced judgment orally and the terms of the pronouncement are questions of fact. *Id.* "The judicial or clerical question becomes a question of law only after the trial court factually determines whether it previously rendered judgment and the judgment's contents." *Id.*

■■■ This court has held that, in order for a judgment nunc pro tunc to be properly granted, the evidence must be clear and convincing that a clerical error was made. *Riner v. Briargrove Park Prop. Owners, Inc.*, 976 S.W.2d 680, 683 (Tex.App.-Houston [1st Dist.] 1997, no writ); *but see Wittau v. Storie*, 145 S.W.3d 732, 736 n. 3 (Tex.App.-Fort Worth 2004, no pet.) (applying traditional legal and factual sufficiency standards). Evidence may be from oral testimony of witnesses, written documents, previous judgments, docket entries, or the trial judge's personal recollection. *Riner*, 976 S.W.2d at 683.

## B. Analysis

■■■ Here, the trial court signed the Agreed Order on January 27, 2004, which included a judgment on arrears, stating, "The Court FINDS and CONFIRMS that [George] is in arrears in the amount of $51,000.00 as of December 31, 2004." The trial court's plenary power expired on February 26, 2004, and the trial court was not permitted to correct a judicial error after that date. *See* Tex.R. Civ. P. 329b(d); *Dikeman*, 490 S.W.2d at 186.

Over two years later, on August 22, 2006, the trial court issued the judgment nunc pro tunc, changing the date of George's arrearage from December 31, 2004 to December 31, 2003. We consider whether the trial court permissibly corrected a clerical error or improperly attempted to correct a judicial error outside of its plenary power. *See* Tex.R. Civ. P. 316; *Escobar*, 711 S.W.2d at 231; *Dikeman*, 490 S.W.2d at 186.

George contends that the change in the year of the confirmation of his arrearage from 2004 to 2003 created a new payment obligation that was not present in the Agreed Order. George contends that the change of date was a substantive change, and thus a judicial error, because it resulted in an extra year of interest and vitiated the parties agreement that the arrearage be confirmed at $51,000 as of December 31, 2004.

The record shows that, on January 21, 2004, a hearing was conducted before a family court master on the OAG's motion for child support enforcement. Subsequently, George, Maria, and the OAG signed the proposed Agreed Order. The terms of the Agreed Order were set forth

by the parties, and the Agreed Order states *that the master submitted "the proposed" Agreed Order to the trial court and recommended its approval.* On January 27, 2004, when the trial court signed the Agreed Order adopting the master's recommendation as the order of the court, *rendition* of the judgment occurred.[1] *See In re Fuselier,* 56 S.W.3d 265, 268 (Tex. App.-Houston [1st Dist.] 2001, orig. proceeding); *see also Roman Catholic Diocese of Dallas v. County of Dallas Tax Collector,* 228 S.W.3d 475, 479 (Tex.App.-Dallas 2007, no pet.) (explaining that signing of agreed judgment submitted to trial court for its approval constitutes rendition of judgment). The error at issue herein, if any, occurred in the *rendering* of the judgment.

An error that is present in the rendition of judgment is always judicial error, which may not be corrected by a nunc pro tunc judgment. *America's Favorite Chicken Co. v. Galvan,* 897 S.W.2d 874, 878–79 (Tex.App.-San Antonio 1995, writ denied) (citing *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58–59 (Tex. 1982)); *Fuselier,* 56 S.W.3d at 267 (stating that error in rendering judgment is judicial error).

In *Galvan,* the plaintiff initially sued the defendant in Bexar County. 897 S.W.2d at 876. Subsequently, the plaintiff decided to bring the lawsuit in Maverick County and filed a motion for non-suit in Bexar County, requesting that the trial court grant a non-suit "with prejudice." *Id.* The trial court issued an order granting the non-suit "with prejudice." *Id.* When the plaintiff re-filed her suit in Maverick County, the defendant moved to dismiss based on the Bexar County trial court's order of non-suit "with prejudice." *Id.* The plaintiff moved for a judgment nunc pro tunc, alleging that she had erroneously moved for non-suit "with" prejudice, rather than "without." *Id.* At a hearing on the motion, the plaintiff's counsel testified that the request for a non-suit "with prejudice" was a clerical error made by his legal assistant. *Id.* The trial court granted the motion and changed the order of non-suit to reflect that it was issued "without prejudice." *Id.* The trial court concluded that "the signing of the nonsuit 'with prejudice' was a ministerial act, which required no judicial reasoning, and could thus be corrected by a judgment nunc pro tunc." *Id.* at 877.

On appeal in *Galvan,* the court vacated the trial court's order granting judgment nunc pro tunc and reinstated the trial court's order granting the plaintiff's motion for non-suit with prejudice. *Id.* at 879. The court reasoned that the trial court could only amend the final written order if there was some evidence that it had, *at some point before the order was entered,* rendered judgment "without prej-

---

1. We recognize that, pursuant to Texas Family Code section 201.007(a)(14), "an associate judge *may:* ... (14) render and sign: a final order agreed to in writing as to both form and substance by all parties" and that such action "constitutes an order of the referring court." *See* Act of May 20, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742, 1742 (amended 2007) (current version at TEX. FAM CODE ANN. § 201.007(a)(14), (c) (Vernon 2008)) (emphasis added). Pursuant to section 201.007(a)(10), however, an associate judge may instead opt to "recommend an order to be rendered in a case." *See id.* (current ver-

sion at TEX. FAM.CODE ANN. § 201.007(a)(10) (Vernon 2008)). Here, the record reflects that the associate judge did precisely that—his order states that he "recommends" that *"the proposed order* be adopted as the judgment of the court." (Emphasis added.)

Moreover, because the error complained of in this case appeared in the associate judge's recommendation, even if the associate judge had chosen to make his recommendation a rendition, appellees cannot prevail because the error would then have appeared in his rendition.

udice." *Id.* at 878. Without regard to evidence showing that the plaintiff attempted to re-file her suit and therefore logically must have intended to request a non-suit "without" prejudice, the appellate court concluded that the trial court never stated in the record that it had intended to render judgment without prejudice. *Id.* at 877. The court concluded that, *if the judgment entered is the same as the judgment rendered,* regardless of whether the rendition was incorrect, a trial court has no nunc pro tunc power to correct or modify the entered judgment after its plenary power expires. *Id.* There was simply no evidence that the trial court intended to do anything other than grant the motion exactly as the plaintiff had requested. *Id.* at 878.

■ Here, the OAG contends that George's assertion that the parties agreed in January 2004 to set the arrearage at $51,000 as of December 31, 2004 is illogical. Indeed, by definition, to be in "arrears" is to be "behind in the payment of a debt or the discharge of an obligation." BLACK'S LAW DICTIONARY 104 (7th ed.1999). An "arrearage" is an unpaid or overdue debt. *Id.* However, even if the trial court incorrectly rendered judgment, it cannot alter a written judgment that precisely reflects the incorrect rendition. *See Escobar,* 711 S.W.2d at 232. We must look to the judgment actually rendered and not the judgment that should have been rendered. *Id.* at 231.

Nothing in the record before us suggests that the trial judge applied his personal recollection of the facts surrounding the Agreed Order to determine the motion for judgment nunc pro tunc. *See Riner,* 976 S.W.2d at 683. Like *Galvan,* in which plaintiff's counsel testified that language presented in the motion to the trial court was in error, here, Maria testified that the date of December 31, 2004 stated in the

Agreed Order was in error and that she intended for the date to have been December 31, 2003. *See Galvan,* 897 S.W.2d at 876. Here, as there, there is no evidence in the record that the trial court intended to do anything other than grant the motion exactly as the parties requested, and there is no evidence in the record before us with regard to any prior rendition of judgment. *See id.* Again, as in *Galvan,* without such evidence in the record, it is of no consequence which date Maria may have intended in the Agreed Order that she signed or whether this Court can agree that the date that Maria now asserts is, as a matter of logic, the date everyone who signed the Agreed Order prior to presenting it to the trial court *must* have intended.

As the court concluded in *Galvan, if the judgment entered is the same as the judgment rendered, regardless of whether the rendition was incorrect,* a trial court has no nunc pro tunc power to correct or modify the entered judgment after its plenary jurisdiction expires. *See Galvan,* 897 S.W.2d at 877 (applying *Escobar,* 711 S.W.2d at 232); *see also In re Cherry,* 258 S.W.3d 328, 333 (Tex.App.-Austin 2008, no pet.) (explaining that "a nunc pro tunc order can only be used to make corrections to ensure that the judgment conforms with what was already determined and not what should have been determined").

■ Even an incorrect or unintended rendition of judgment does not constitute an error *in the entry or recording* of the judgment that can be corrected by a judgment nunc pro tunc. *Escobar,* 711 S.W.2d at 232; *Alford v. Whaley,* 794 S.W.2d 920, 922 (Tex.App.-Houston [1st Dist.] 1990, no writ). "The judgment as entered must differ from the judgment as rendered; a nunc pro tunc judgment will only serve to ensure that the judgment as rendered is actually entered of record." *See Galvan,* 897 S.W.2d at 878 (applying

*Escobar,* 711 S.W.2d at 231). Here, like *Galvan,* nothing in the record shows that there is a discrepancy between the judgment as rendered and the judgment as entered. *See id.; Barton,* 178 S.W.3d at 126.

We conclude that the trial court's signing of the Agreed Order on January 27, 2004 constituted its rendition of judgment. *See Galvan,* 897 S.W.2d at 878. Because the error complained of was present in the trial court's rendition of judgment on that day, the error, if any, constituted judicial error. Because an error in the rendition of judgment is always judicial error, we conclude that the trial court erred by granting the OAG's motion for judgment nunc pro tunc. We hold that the judgment nunc pro tunc is void because it constitutes an attempt to correct a judicial error after the expiration of the trial court's plenary power.

Accordingly, we sustain George's issue.

### Conclusion

We vacate the trial court's judgment nunc pro tunc, leaving intact the trial court's original judgment of January 27, 2004.

Justice KEYES, dissenting.

### DISSENTING OPINION ON REHEARING

EVELYN V. KEYES, Justice.

I withdraw my dissenting opinion dated August 28, 2008 and substitute this opinion in its stead. I continue respectfully to dissent. I would hold that the judgment signed by the trial court on August 22, 2006 was a judgment nunc pro tunc that corrected a clerical error in the final agreed order enforcing arrearages against Appellant George Hernandez rendered by the associate judge on January 21, 2004 and entered by the referring trial court on January 28, 2004. Therefore, I would affirm the judgment nunc pro tunc in favor of appellees Maria Guadalupe Lopez (Hernandez) and the Office of the Attorney General of Texas (OAG).

George appeals from a nunc pro tunc judgment signed by the trial court on August 22, 2006. The nunc pro tunc judgment corrected the date on which George was found to be in arrearage on child support payments to December 31, **2003** from the date of December 31, **2004** recited in the court's January 28, 2004 judgment. That January 28, 2004 judgment entered as the judgment of the referring court an "Agreed Order Enforcing Child Support Obligation" ("Agreed Order") that had been rendered and signed by the associate judge of the court on January 21, 2004, pursuant to former section 201.007(a)(14)(A) of the Family Code. *See* Act of May 21, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742 (current version at TEX. FAM.CODE ANN. § 201.007(a)(14)(A) (Vernon 2008)) (conferring power on associate judges of family courts to render final agreed orders except as limited by orders of referral).[1]

1. Former section 201.007(a)(14)(A), effective September 1, 2003, provided in relevant part:
   (a) Except as limited by an order of referral, an associate judge may:
   (1) conduct a hearing;
   (2) hear evidence;
   (3) compel production of relevant evidence;
   (4) rule on the admissibility of evidence;
   . . . .

   (8) make findings of fact on evidence;
   (9) formulate conclusions of law;
   . . . .
   (14) render and sign:
   (A) a final order agreed to in writing as to both form and substance by all parties . . . . . .

In the January 21, 2004 hearing, the associate judge heard evidence of the terms of the parties' Agreed Order and transcribed them in the written "Agreed Order." Appellant and appellees Maria and the OAG then initialed the transcribed Agreed Order and the associate judge signed it. The Agreed Order stated, in relevant part, "The Court FINDS and CONFIRMS that George Everardo Hernandez is in arrears in the amount of $51,000.00 as of December 31st, 2004"—a date then eleven months in the future—including "all unpaid child support and any balance owed on previously confirmed arrearages or retroactive support judgments as of the specified date." (Bold emphasis added.). The final Agreed Order rendered judgment against George in the amount of $51,000 on the basis of that finding and stated that "[t]he judgment for this amount is a cumulative judgment." The Agreed Order also contained findings that George failed to pay court-ordered child support on four specific dates in 2003. The referring court signed and entered the final Agreed Order as the judgment of the court on January 28, 2004.

The OAG subsequently moved for judgment nunc pro tunc, contending that the Agreed Order did not reflect the agreement of the parties but contained a clerical error, namely the finding that George was cumulatively in arrears as of December 2004, rather than December 2003. At the nunc pro tunc hearing, the OAG presented evidence in the form of Maria's testimony that the associate judge heard the terms of the "Agreed Order" in open court and that the date of December 31, 2004 was incorrectly transcribed by the associate judge in the written Agreed Order:

Q. Did you approach the judge with the Attorney General and your ex?

A. I believe so, yes, sir.

Q. Okay. And did you-all recite your agreement into the record?

A. Yes, sir.

Q. And was it agreed upon and stipulated on the record that the arrears as of December 31, 2003 were $51,000?

A. Yes, sir.

Q. Was there any testimony on the record—Was there any testimony that the agreement was 2004?

A. No, sir.

George did not present contrary evidence.

At the close of the nunc pro tunc hearing, the trial court granted the OAG's motion for judgment nunc pro tunc, ordered that the confirmation date of the arrearage be changed from December 31, 2004 to December 31, 2003, and wrote that finding into the August 22, 2006 nunc pro tunc judgment. With respect to the January 28, 2004 judgment, the court commented, "I think it is permissible for the court to assume that the underlying court would not enter a judgment it had no authority to enter." I construe the court's comment as its determination that it had no authority to enter a judgment on January 28, 2004 that did not accurately reflect the terms of the final Agreed Order rendered by the associate judge on January 21, 2004 and that the error was, therefore, a clerical mistake in the entry of the judgment and not a judicial error in the judgment rendered.

The purpose of a judgment nunc pro tunc is to correct a clerical error in a judgment after the court's plenary power

(c) An agreed order . . . rendered and signed by an associate judge under Subsection (a) constitutes an order of the referring court.
. . . .

Act of May 21, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742 (current version at Tex. Fam.Code Ann. § 201.007(a)(14)(A) (Vernon 2008)).

has expired. *Jenkins v. Jenkins,* 16 S.W.3d 473, 482 (Tex.App.-El Paso 2000, no pet.); *see also Hawk v. E.K. Arledge, Inc.,* No. 05–01–01144–CV, 2002 WL 1225917, at *2 (Tex.App.-Dallas June 6, 2002, pet. denied) (mem.op.) (purpose of judgment nunc pro tunc is to make written record of judgment accurately reflect trial court's decision and relief ordered). Thus, the nunc pro tunc rule provides that "clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case after notice of the motion therefor has been given to the parties interested in such judgment." Tex.R. Civ. P. 316. A trial court has plenary power to correct by judgment nunc pro tunc a clerical error made in entering a final judgment, but it cannot correct a judicial error made in rendering final judgment. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986); *Jenkins,* 16 S.W.3d at 482.

"Rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue." *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970) (quoting *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, 1041 (Tex.1912)). An agreed judgment—or, in this case, a final order—is rendered "whenever the trial judge officially announces his decision in open court ... in his official capacity for his official guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause." *Samples Exterminators v. Samples,* 640 S.W.2d 873, 875 (Tex.1982) (quoting *Comet Aluminum,* 450 S.W.2d at 59, and holding that, after parties had voiced their approval of settlement dictated in open court, "the trial court rendered judgment by ordering them to sign and follow the agreement"); *see also Patel v. Eagle Pass Pediatric Health Clinic, Inc.,* 985 S.W.2d 249, 252 (Tex.App.-Corpus Christi 1999, no pet.); *accord Noorian v.*

*McCandless,* 37 S.W.3d 170, 173–74 (Tex. App.-Houston [1st Dist.] 2001, writ denied) (agreeing with *Samples,* but finding that settlement agreement was incomplete and was neither read into record nor admitted as exhibit).

A clerical mistake is, by contrast, "a mistake or omission in the final written judgment that prevents it from accurately reflecting the judgment actually rendered." *Hawk,* 2002 WL 1225917, at *2. Thus, to support a judgment nunc pro tunc, the judgment entered must differ from the judgment actually rendered, so that the judgment nunc pro tunc serves only to ensure that the judgment rendered is actually entered of record. *Id.; see also America's Favorite Chicken Co. v. Galvan,* 897 S.W.2d 874, 879 (Tex.App.-San Antonio 1995, writ denied); *Ex parte Hogan,* 916 S.W.2d 82, 85 (Tex.App.-Houston [1st Dist.] 1996, no writ) (trial court had jurisdiction to correct obvious typographical errors in dates of missed child support payments in contempt order nunc pro tunc to make written judgment speak truth of judgment that judge actually rendered verbally in court).

Whether an error in the judgment is clerical or judicial is a question of law. *Escobar v. Escobar,* 711 S.W.2d 230, 232 (Tex.1986). However, whether a court pronounced judgment orally and what the terms of the pronouncement were are matters of fact. *Id.* "The judicial or clerical question becomes a question of law only after the trial court factually determines whether it previously rendered judgment and the judgment's contents." *Id.* An appellate court may review the trial court's factual determinations regarding its rendition of judgment for legal and factual sufficiency of the evidence. *Id.*

Under former section 201.007(a)(14)(A) of the Family Code, an associate family

judge was given the authority to render a final agreed order. *See* Act of May 21, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742 (current version at Tex. Fam.Code Ann. § 201.007(a)(14)(A) (Vernon 2008)). Here, the associate judge exercised that authority by hearing the terms of the agreement in open court, transcribing them, and ordering the parties to sign and follow the agreement whose terms they had recited—an agreement enforcing against George the arrearages in his child support payments accumulated as of December 31, 2003. *See* Act of May 21, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742 (current version at Tex. Fam.Code Ann. § 201.007(a)(1), (2), (14)(A) (Vernon 2008)). However, the associate judge mistakenly transcribed the arrearages as of December 31, 2004, a date then 12 months in the future. The Agreed Order was then transmitted to the referring court for entry as the judgment of the court. *See* former section 201.007(c) (providing, "An agreed order ... rendered and signed by an associate judge under Subsection (a) constitutes an order of the referring court."). Thus the trial court's entry of the final Agreed Order as its judgment on January 28, 2004 was not the rendition of judgment, but the purely ministerial act of entry of judgment. *See Serna v. Webster,* 908 S.W.2d 487, 490 (Tex.App.-San Antonio 1995, no pet.) (signing of formal order or judgment is essential to trigger appropriate appellate timetable, but is otherwise merely ministerial, mechanical act); *see also* Tex.R. Civ. P. 306 (providing for entry of judgment to determine beginning of periods prescribed by rules).

The purpose of the trial court's August 22, 2006 hearing on appellees' Rule 316 motion for judgment nunc pro tunc was to determine whether the judgment entered on January 28, 2004 accurately reflected the terms of the final Agreed Order recited to the associate judge at the January 21, 2004 hearing. *See* Tex.R. Civ. P. 316. The trial court heard testimony at the nunc pro tunc hearing that, under the terms of the Agreed Order as recited to the associate judge in open court, George was in arrears in the amount of $51,000.00 as of December 31, 2003, not, as incorrectly transcribed in the associate judge's handwritten findings, 2004. This testimony was not disputed.

I would hold that the evidence at the nunc pro tunc hearing was legally and factually sufficient to support the trial court's implied factual determination that the confirmation date of arrearage recorded in its January 28, 2004 judgment did not accurately reflect the terms of the final Agreed Order recited to the associate judge in open court on January 21, 2004, that the confirmation date of arrearage was incorrectly transcribed by the associate judge, and that George was actually in arrears in the amount of $51,000 as of December 31, 2003, as the record shows-not December 31, 2004.

Because there is probative evidence to support the trial court's determination that the judgment of the referring court entered on January 28, 2004 did not accurately reflect the final Agreed Order rendered by the associate judge on January 21, 2004, I would hold that the sentence of law pronounced was that to which the parties testified at the nunc pro tunc hearing, namely that George was in arrears in the amount of $51,000 as of December 31, 2003, and that he should pay arrearages from that time—and not from December 31, 2004, a date testified to by no one, contrary to the testimony, the evidence, and logic, and appearing only in the incorrect handwritten transcription of the parties' final Agreed Order by the associate judge, which was subsequently entered by the referring court as the judgment of the

court. Thus, I would hold that the trial court did not err in correcting the arrearage confirmation date in its August 22, 2006 judgment nunc pro tunc, and I would, therefore, affirm the August 22, 2006 nunc pro tunc judgment. *See Escobar*, 711 S.W.2d at 232 (affirming judgment nunc pro tunc when, at hearing on motion for judgment nunc pro tunc, district court heard evidence of partial judgment orally rendered by different presiding judge in complex proceedings that differed from written judgment entered on all claims in case four years later and court heard evidence of contents of oral partial judgment, and some record evidence supported trial court's decision to correct judgment).

The majority, however, holds that rendition of judgment occurred on January 28, 2004, when the trial court adopted the associate judge's final report, consisting of the final Agreed Order. Because all errors in the rendition of judgment are substantive judicial errors, not clerical errors, the majority holds that the trial court erred in correcting the arrearage confirmation date in the January 28, 2004 judgment nunc pro tunc, and it vacates the nunc pro tunc judgment signed on August 22, 2006.

The majority relies for support on *Galvan*, 897 S.W.2d 874, *Roman Catholic Diocese of Dallas v. County of Dallas Tax Collector*, 228 S.W.3d 475, 479 (Tex.App.-Dallas 2007, no pet.), *In re Fuselier*, 56 S.W.3d 265, 268 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding), and *Stein v. Stein*, 868 S.W.2d 902 (Tex.App.—Houston [14th Dist.] 1994). None of the cases cited by the majority, however, support its holding.

The majority relies most heavily upon *Galvan*, which is distinguishable from the case at hand. In *Galvan*, the plaintiff requested that the trial court grant her motion for non-suit "with prejudice," and,

after the trial court had entered the judgment and dismissed the suit, she requested correction of the judgment "nunc pro tunc" to reflect dismissal "without prejudice," claiming the request for a non-suit "with prejudice" was a clerical error made by her counsel's legal assistant. 897 S.W.2d at 876. There is no question, however, that a judicial ruling dismissing a suit "with prejudice" in response to the prayer of a party is a declaration of the law upon the matters at issue. *See Comet Aluminum Co.*, 450 S.W.2d at 58 (defining rendition of judgment). Therefore, I disagree that *Galvan* is applicable to this case, in which the error corrected was not a judicial ruling but a transcription mistake.

Likewise, in *Roman Catholic Diocese*, an agreed judgment was submitted to the trial court pursuant to a compromise and settlement. 228 S.W.3d at 479. The terms were set forth in the agreed judgment. *Id.* That judgment imposed ad valorem tax liability on the Diocese for the years 1989 through 1991. *Id.* at 478–79. Approximately nine months later, the parties submitted an agreed "nunc pro tunc" judgment to the trial court that imposed an additional two years of tax liability on the Diocese, and the trial court approved it. *Id.* at 479. The appellate court voided the "nunc pro tunc" judgment, stating, "A substantive change in a judgment results from the correction of a judicial error, not a clerical one." *Id.* The court explained, "Because the trial court approved the settlement by signing the agreed judgment, the judge's act of signing the judgment constituted his rendition of the judgment" and "any error that may have been made in the drafting of the judgment became part of the judgment the court rendered at the time the judgment was signed." *Id.* In sum, the original mistake was the parties' own drafting mistake, and, by accepting their statement of the substantive terms of

the agreed judgment, the trial court rendered judgment. It could not then go back at the parties' request and, by signing a judgment "nunc pro tunc," change a mistake in the declaration of the substantive law into a clerical mistake.

In *In re Fuselier,* as in *Galvan,* the court signed an order dismissing a nonsuited case "with prejudice." 56 S.W.3d at 266. The order was signed as "approved" by counsel for the movant. *Id.* at 267. When the same plaintiff subsequently filed a second suit on the same issue, her new counsel discovered the dismissal with prejudice and sought entry of an order nunc pro tunc changing the dismissal to one with without prejudice on the ground that the original order was mistakenly submitted by the plaintiff's former attorney. *Id.* The trial court signed the order, but the appeals court vacated it on the ground that the original order correctly reflected the judgment actually rendered. *Id.* at 267–68. Again, the mistake that was sought to be corrected by judgment "nunc pro tunc" was a mistake in the declaration of the substantive law, not a clerical mistake.

Former section 201.007(a)(14)(A) of the Family Code plainly states both that an associate judge has the authority to hold an evidentiary hearing on the terms of an agreed order and to *render* a final agreed order in accordance with those terms and that any such order that is "rendered and signed by an associate judge under Subsection (a) constitutes an order of the referring court." *See* Act of May 21, 2003, 78th Leg., R.S., ch. 476, § 1, 2003 Tex. Gen. Laws 1742, 1742–43 (current version at TEX. FAM.CODE ANN. § 201.007(a)(14)(A) (Vernon 2008)). Not only does the majority's holding nullify the statute, but it also leads to the absurd result that a final agreed order is *not* rendered by the associate judge who heard its terms recited in open court by the parties, transcribed them, and signed the final order, but *is*

rendered by the referring court that did *not* hear or transcribe the terms but merely entered the final order as its own judgment.

The essential problem with the majority's holding that "rendition" of a final Agreed Order heard, transcribed, and signed by an associate family judge occurs when the referring court enters the final order as the judgment of the court is that, with this holding, clerical errors in the transcription of the terms of an agreed final order recited to an associate family judge under the authority conferred by former section 201.007(a)(14)(A) are automatically transformed into substantive judicial errors. Hence, the intent of section 201.007(a)(14)(A), that associate judges of the family court be empowered to render final agreed orders, except as limited by orders of referral, is nullified, and there can never be a nunc pro tunc correction of a final agreed order rendered by an associate family judge pursuant to section 201.007(a)(14)(A), no matter how absurd or obvious a mistake is made in transcribing the terms of the agreement. I believe that the court's holding is inconsistent both with the plain language and purpose of section 201.007(a)(14)(A) and with the purpose of the nunc pro tunc rule, as well as with *Comet Aluminum* and *Samples,* which approve the correction of clerical errors in a judgment nunc pro tunc. *See Samples,* 640 S.W.2d at 875; *Comet Aluminum,* 450 S.W.2d at 58–59.

I would overrule appellant's sole issue.

### Conclusion

I would affirm the trial court's judgment nunc pro tunc.

Justice KEYES, dissenting.