Opinion issued May 7, 2009















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00686-CV

__________


GRACE BLAIR, Appellant


V.


ROBERT BLAIR, Appellee






On Appeal from the 387th District Court

Fort Bend County, Texas

Trial Court Cause No. 05-DCV-141958






MEMORANDUM OPINION

 Appellant, Grace Blair, challenges the trial court's judgment nunc pro tunc
entered subsequent to the parties' agreed final decree of divorce. In six issues, Grace
contends that the trial court erred in entering the judgment nunc pro tunc as the decree
did not "describe how either party should handle the tax liability related to the
alimony payments" and the judgment nunc pro tunc added substantive provisions
related to the issues of tax liability. Within her issues, Grace further contends that the
trial court's docket sheet and the parties' agreed property division filed with the trial
court did not "describe how either party should handle the tax liability related to the
alimony payments," these provisions of the judgment nunc pro tunc were entered to
correct a judicial rather than a clerical error, and the trial court did not have
jurisdiction to modify the decree. (1) 

 We modify the trial court's judgment nunc pro tunc by deleting certain portions
of the judgment nunc pro tunc and, as modified, we affirm. 

Factual and Procedural Background

 On September 6, 2006, Grace filed an amended original petition for divorce
from Robert. On November 7, 2006, the parties filed with the trial court an agreed
"property division" bearing Grace's and Robert's initials and setting forth, in
significant detail, the agreed division of the parties' property and liabilities. Within
the property division agreement, there is a handwritten notation, which "GB [Grace]"
initialed, stating, "Robert to pay $3,368.00 per month to be [paid] out over 6 months
as alimony beginning Jan 1 07 directly to Grace." (Emphasis added). The trial court,
in a docket sheet entry on November 7, 2006, wrote, "Parties & Attys [appeared] for
trial, [motion for] continuance denied," "agreement, property division filed [with]
court, divorce granted, entry 12/07/06." 

 On February 22, 2007, the trial court signed the parties' agreed final decree of
divorce (the "decree"), stating that, "on November 7, 2006[,] the Court approved the
agreement of the parties as set out herein below." The trial court found that the
parties had "entered into a written agreement as contained in this decree by virtue of
having approved this decree as to both form and substance," and the trial court
approved "the agreement of the parties as contained" in the decree. (2) The parties and
their attorneys signed the decree. (3) However, unlike the property division agreement,
in which the parties used the term "alimony" to describe Robert's monthly payment
obligation to Grace, the first paragraph of the "spousal support" provision of the
decree referred to this obligation as "spousal maintenance" or "maintenance." The
"spousal support" provision of the decree provided,

 Spousal Support

 The Court finds that under the circumstances presented in this
case, Grace Blair is eligible for maintenance under the provisions of
Texas Family Code chapter 8. Accordingly, Robert Blair is ordered to
pay as maintenance the sum of $3,368.00 per month to Grace Blair, with
the first payment being due on January 1, 2007 and a like payment due
and payable on the 1st day of each consecutive month thereafter until
the earliest of one of the following events occurs:


 1. June 1, 2007;


 2. death of either [Grace Blair] or [Robert Blair];


 3. remarriage of Grace Blair; or


 4. further orders of the Court affecting the spousal
maintenance obligation, including a finding of cohabitation
by Grace Blair.


 Payment shall be made by Robert Blair directly to Grace Blair by
cash, cashier's check, or money order at the last known address provided
to Robert Blair by Grace Blair.


 IT IS FURTHER ORDERED that Robert Blair shall notify this
Court and Grace Blair by U.S. certified mail, return receipt requested,
of any change of address and of any termination of employment. This
notice shall be given no later than seven days after the change of address
or the termination of employment. This notice or a subsequent notice
shall also provide the current address of Robert Blair and the name and
address of his current employer, whenever that information becomes
available. 


(Emphasis added).

 On May 22, 2008, Robert filed a motion for judgment nunc pro tunc, in which
he asserted that on November 7, 2006, the case had been set for trial, the parties had
entered into a property division agreement, they had filed their property division
agreement with the trial court, and the trial court had granted the parties a divorce on
this property division agreement. Robert further asserted that the trial court's decree
of February 22, 2007 included a clerical error by using the term "maintenance" to
describe Robert's monthly payment obligation to Grace rather than the term
"alimony," which the parties used in their property division agreement and upon
which the trial court had previously rendered judgment. At a hearing on Robert's
motion for judgment nunc pro tunc, Robert's counsel reminded the trial court that, on
November 7, 2006, the parties had appeared and announced ready for trial, the parties
had obtained permission from the trial court to negotiate a settlement, the parties had
approved a property division agreement, and the parties had submitted their property
division agreement to the trial court. Robert's counsel then cited to the provision of
the property division agreement providing for the monthly "alimony" payments, and
Robert's counsel then stated that this provision was not contained in the subsequent
decree filed with the trial court in February 2007. Robert's counsel explained that,
contrary to the agreed upon "alimony" payments, the decree mistakenly referred to
"spousal maintenance."

 Robert' s counsel argued that the trial court should correct this clerical error in
a judgment nunc pro tunc because the written decree "failed to set out the language
as to the alimony." Robert's counsel cited the trial court's docket sheet as evidence
that the trial court had actually rendered a judgment on November 7, 2006 on the
parties' property division agreement and Robert's counsel contended that the written
decree did not accurately reflect the judgment rendered because it omitted the
alimony provision.

 Grace did not appear at this hearing, but she did file a response, which the trial
court considered. In her response, Grace asserted that Robert was complaining of a
judicial rather than a clerical error, which could not be corrected in a judgment nunc
pro tunc. Grace further asserted that the decree evidenced the terms agreed upon by
the parties. 

 The trial court then considered Robert's proposed judgment nunc pro tunc. 
The trial court immediately struck one of the paragraphs of the proposed judgment
nunc pro tunc, (4) and then stated on the record,

 Based on the testimony, the evidence and all the documentation
including case law before the Court today, I find that a nunc pro tunc
would be . . . a proper avenue to correct that error. The settlement
agreement between the parties was approved by the Court, filed in the
. . . clerk's file and it is clear that [Grace] knew it was alimony. Her
initials were right--almost right next to the word "alimony." So, based
on that, I'm granting your nunc pro tunc . . . .


(Emphasis added). The trial court then signed the judgment nunc pro tunc, changing
the references to "spousal maintenance" and "maintenance" contained in the above-quoted first paragraph of the "spousal support" provision of the decree to "alimony." 
However, in addition to the changes of these terms in the first paragraph, the trial
court, at Robert's request, also included five entirely new paragraphs (5) that addressed
the parties' tax liabilities with respect to the alimony payments and imposed certain
requirements on Grace to provide Robert with assurances that she had complied with
the parties' agreement as to these tax liabilities. The "spousal support" provision of
the judgment nunc pro tunc provided: Spousal Support


 The Court finds that under the circumstances presented in this
case, Grace Blair is eligible for alimony under the provisions of Texas
Family Code chapter 8. Accordingly, Robert Blair is ordered to pay as
alimony the sum of $3,368.00 per month to Grace Blair, with the first
payment being due on January 1, 2007 and a like payment due and
payable on the 1st day of each consecutive month thereafter until the
earliest of one of the following events occurs:


 1. June 1, 2007;


 2. death of either [Grace Blair] or [Robert Blair];


 3. remarriage of Grace Blair; or


 4. further orders of the Court affecting the alimony obligation,
including a finding of cohabitation by Grace Blair.


 Payment shall be made by Robert Blair directly to Grace Blair by
cash, cashier's check, or money order at the last known address provided
to Robert Blair by Grace Blair.


 In accordance with section 71 of the Code, all alimony payments
made under this article will be includable as income on Grace Blair's
income tax returns beginning in calendar year 2007. In addition, those
payments will be deductible on Robert Blair's income tax returns in
accordance with section 215 of the Code beginning in the same
calendar year.


 All payments made under this article are taxable to Grace Blair
and includable in Grace Blair's gross income, and Grace Blair agrees
to report them in Grace Blair's federal income tax return and to pay all
taxes due thereon. Grace Blair agrees to furnish written assurance
signed by Grace Blair and by any tax return preparer that payments
made under this article have been included as income in Grace Blair's
federal income tax return for the applicable year. The written
assurance will be given at the time the federal income tax return is filed.


 Robert Blair will be entitled to deduct all payments from Robert
Blair's federal income tax return.


 IT IS FURTHER ORDERED that Robert Blair shall notify this
Court and Grace Blair by U.S. certified mail, return receipt requested,
of any change of address and of any termination of employment. This
notice shall be given no later than seven days after the change of address
or the termination of employment. This notice or a subsequent notice
shall also provide the current address of Robert Blair and the name and
address of his current employer, whenever that information becomes
available.


 Robert Blair will be entitled to deduct all payments from Robert
Blair's federal income tax return.


 These support payments undertaken by Robert Blair, Robert
Blair, are entitled to qualify as contractual alimony as that term is
defined in section 71(a) of the Internal Revenue Code of 1986 ("the
Code"), as amended, and are intended to be includable in the gross
income of Grace Blair under section 71(a) of the Code and deductible
by Robert Blair under section 215(a) of the Code. All provisions
relating to alimony will be interpreted in a manner consistent with that
intention. 


(Emphasis added). (6) The trial court subsequently denied Grace's new trial motion and
request for findings of fact and conclusions of law.

Judgment Nunc Pro Tunc

 In six issues, Grace argues that the trial court erred in entering the judgment
nunc pro tunc because the decree did not "describe how either party should handle the
tax liability related to the alimony payments" and the judgment nunc pro tunc added
substantive provisions related to the issues of tax liability. Within her issues, Grace
asserts that the trial court's docket sheet and the parties' agreed property division
filed with the trial court did not "describe how either party should handle the tax
liability related to the alimony payments," these provisions of the judgment nunc pro
tunc were entered to correct a judicial rather than a clerical error, and the trial court
did not have jurisdiction to modify the decree. Consistent with her position in the
trial court, (7) on appeal, Grace only directly challenges the trial court's inclusion of the
five additional paragraphs, (8) which are italicized in full above, that relate to issues of
tax liability. 

 Robert argues that the trial court entered the judgment nunc pro tunc simply to
correct a "clerical error in the decree that identified a payment as spousal support
instead of alimony." (9) Robert characterizes the five additional paragraphs contained
in the judgment nunc pro tunc as merely statutory provisions defining the tax
treatment of alimony, and Robert contends that, by agreeing to the term alimony,
Grace necessarily agreed to these "statutory provisions that define [that] word." 

 A trial court has plenary power for 30 days after a judgment is signed to grant
a new trial or to vacate, modify, correct, or reform its judgment. Tex. R. Civ. P.
329b(d). Once a trial court's plenary power expires, it cannot set its judgment aside
except by a bill of review for sufficient cause. Tex. R. Civ. P. 329b(f). However, a
trial court may at any time correct a clerical error in the judgment by entering a
judgment nunc pro tunc. Tex. R. Civ. P. 316; 329b(f); Escobar v. Escobar, 711
S.W.2d 230, 231 (Tex. 1986); Barton v. Gillespie, 178 S.W.3d 121, 126 (Tex.
App.--Houston [1st Dist.] 2005, no pet.). 

 A clerical error is a discrepancy between the entry of a judgment in the record
and the judgment that was actually rendered. Barton, 178 S.W.3d at 126 (citing
Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986)); Butler v. Cont'l Airlines, Inc.,
31 S.W.3d 642, 647 (Tex. App.--Houston [1st Dist.] 2000, pet. denied). A clerical
error does not result from judicial reasoning, evidence, or determination. Barton, 178
S.W.3d at 126. In contrast, a judicial error arises from a mistake of law or fact that
requires judicial reasoning to correct. Id. "A judicial error occurs in the rendering,
rather than the entering of the judgment." Id. (citing Escobar, 711 S.W.2d at 231).

 A trial court can only correct the entry of a final written judgment by a
judgment nunc pro tunc if the final written judgment incorrectly states the judgment
actually rendered. Id. Even if a trial court incorrectly renders judgment, it "cannot
alter a written judgment that precisely reflects the incorrect rendition." Id. If a trial
court corrects a judicial error after its plenary power has expired, its judgment is void. 
Id. (citing Dikeman v. Snell, 490 S.W.2d 183, 186 (Tex. 1973)). When deciding
whether an error in a judgment is clerical or judicial, courts "must look to the
judgment actually rendered and not the judgment that should have been rendered." 
Id. (citing Escobar, 711 S.W.2d at 231). 

 Whether an error is judicial or clerical is a question of law. Id. However,
whether the trial court pronounced judgment orally and the terms of any
pronouncement are questions of fact. Hernandez v. Lopez, No. 01-06-00901-CV,
2009 WL 793635, at *4 (Tex. App.--Houston [1st Dist.] Mar. 26, 2009, no pet. h.). 
"The judicial or clerical question becomes a question of law only after the trial court
factually determines whether it previously rendered judgment and the judgment's
contents." Id. (citing Escobar, 711 S.W.2d at 232).

 In order to properly grant a judgment nunc pro tunc, "the evidence must be
clear and convincing that a clerical error was made." Barton, 178 S.W.3d at 127
(citing Riner v. Briargrove Park Prop. Owners, Inc., 976 S.W.2d 680, 683 (Tex.
App.--Houston [1st Dist.] 1997, no writ)). "Evidence may be from oral testimony
of witnesses, written documents, previous judgments, docket entries, or the trial
judge's personal recollection." Id. If a trial court relies on its own personal
recollection of the facts, "we presume that the court's recollection supports the
finding of clerical error." Id.

 Here, there is evidence in the record to support the finding that the trial court
pronounced and rendered judgment on November 7, 2006 by granting the parties a
divorce in accordance with their property division agreement, which was initialed by
the parties and filed with the trial court. As relied upon by the trial court in the
hearing on the motion for judgment nunc pro tunc, the trial court's docket sheet states
that, on November 7, 2006, the trial court denied any continuances and granted the
parties a divorce pursuant to the property division agreement filed with the trial court. 
It is undisputed that the property division agreement itself includes a handwritten
notation requiring Robert to make monthly payments of "alimony" to Grace, not
"spousal maintenance" or "maintenance." Even Grace appears to agree with this fact
by treating any distinction between the use of the terms "alimony" and "maintenance"
as immaterial. (10) 

 Moreover, Robert's attorney, at the judgment nunc pro tunc hearing, and
Grace's attorney, at a subsequent hearing in the trial court, agreed that the parties had
in fact submitted the agreed property division to the trial court on November 7, 2006,
which required the payment of alimony, although Grace disputed that the parties
reached any agreement as to the additional tax liability paragraphs. The trial court,
during the judgment nunc pro tunc hearing, reviewed the property division agreement
and declared that it had been "approved by the court" on November 7, 2006 in the
course of granting the parties a divorce. Ample evidence was presented to support
the trial court's conclusion that the use of the terms "maintenance" and "spousal
maintenance" in the first paragraph of the "spousal support" provision in the decree
was a clerical error. 

 Accordingly, we hold that the trial court did not err in entering the portion of
the judgment nunc pro tunc changing the terms "maintenance" and "spousal
maintenance" in the first paragraph of the "spousal support" provision in the decree
to the term "alimony" in the first paragraph of the "spousal support" provision in the
judgment nunc pro tunc. See Barton, 178 S.W.3d at 127 (affirming trial court's entry
of judgment nunc pro tunc after finding that divorce decree "clearly did not reflect the
trial court's rendition"); Delaup v. Delaup, 917 S.W.2d 411, 413 (Tex.
App.--Houston [14th Dist.] 1996, no writ) (affirming entry of judgment nunc pro
tunc when trial court had entered final written judgment that omitted several key
aspects of settlement agreement after trial court had rendered decision orally granting
divorce and approving agreement).

 However, the additional five paragraphs that address tax liabilities arising out
of the alimony payments and that impose, among other things, an assurance
obligation upon Grace present a much different issue. Unlike the above-cited
evidence that the trial court had rendered a judgment on November 7, 2006 upon the
parties' agreement to impose alimony obligations, there is no evidence in the record
that the trial court ever rendered a judgment prior to its signing of the decree that
touched in any way upon the matters addressed in these five additional paragraphs
related to tax liabilities. The property division agreement filed with and submitted
to the trial court, upon which the trial court granted the divorce and rendered
judgment in 2006, addresses only Robert's obligations to pay alimony. It does not
provide any evidence that the trial court ever rendered a judgment on these tax
liability matters. The docket sheet also makes no reference to any agreement other
than the agreed property division upon which the trial court rendered judgment. 
Finally, the trial court did not make any statement on the record that it had any
recollection that these matters were addressed in the judgment that it had previously
rendered. These five additional paragraphs included in the "spousal support"
provision in the judgment nunc pro tunc addressing the parties' tax liability "were
both substantive and material and could not properly be accomplished by a judgment
nunc pro tunc." See Riner, 976 S.W.2d at 683. In sum, there is no evidence to
support the trial court's entry of the judgment nunc pro tunc in regard to these five
additional paragraphs addressing, among other things, the tax liability issues. 

 Conclusion


 Because no evidence supports the trial court's entry of the judgment nunc pro
tunc in regard to the five additional paragraphs in the "spousal support" provision that
address, among other things, the tax liability issues, these paragraphs of the trial
court's judgment nunc pro tunc are void. Accordingly, we modify the trial court's
judgment nunc pro tunc to delete these five additional paragraphs. However, because
there is evidence to support the portion of the trial court's judgment nunc pro tunc in
which the trial court corrects the first paragraph of the "spousal support" provision
of the decree by substituting the term "alimony" in place of the terms "spousal
maintenance" and "maintenance," we affirm the trial court's judgment nunc pro tunc
in this respect. We affirm the trial court's judgment nunc pro tunc as modified. 

 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.
1. Robert Blair has also filed a motion to dismiss Grace's appeal for lack of jurisdiction,
asserting that Grace had untimely filed her notice of appeal on August 8, 2008. 
However, as explained in Grace's response, she timely filed her new trial motion by
mailing it on June 21, 2008, thirty days after the trial court had signed the judgment
nunc pro tunc. See Tex. R. Civ. P. 5, 329b(a). This mailing date is reflected in the
certificate of service and verification attached to Grace's new trial motion, and Grace
also attached to her response the filing letter accompanying her new trial motion,
postmarked June 21, 2008, as well as an affidavit. See id. Robert has not filed a
reply to this response. We conclude that Grace timely filed her new trial motion, and,
thus, her notice of appeal, which was filed on August 8, 2008, seventy-eight days after
the final judgment was signed, was also timely filed. See Tex. R. App. P. 26.1. 
Accordingly, we deny Robert Blair's motion to dismiss. 
2. The trial court's February 22, 2007 docket entry reads "final order and QDRO
signed."
3. The decree also contained a provision stating that Grace and Robert "did not appear
in person" but had agreed to the terms of the decree as evidenced by their signatures
and the signatures of their attorneys and a provision stating that the "making of a
record of testimony was waived by the parties with the consent of the Court." The
parties' signatures on the decree are not dated, and the file-stamp appearing on the
decree is February 23, 2007. There is nothing on the face of the decree to otherwise
indicate its date of filing, and, in his reply brief, Robert agrees that the decree signed
by the trial court was not "presented to the court until February 2007." 
4. Robert agreed to the trial court's striking of this paragraph, and this paragraph is not
at issue in this appeal.
5. As illustrated below, three of these additional five paragraphs were inserted after the
original second paragraph in the "spousal support" provision of the decree and two
of the additional paragraphs were inserted after the original third paragraph in the
"spousal support" provision of the decree. Two of the additional paragraphs in the
judgement nunc pro tunc were identical.
6. The modifications of the terms in the first paragraph of the "spousal support"
provision of the judgment nunc pro tunc are italicized as are the five additional
paragraphs addressing tax liability.
7. In her response to Robert's motion for judgment nunc pro tunc, Grace specifically
challenged Robert's request to include the five additional paragraphs, and she did not
specifically complain of Robert's request to change the terms "spousal maintenance"
and "maintenance" in the first full paragraph of "spousal support" provision of the
decree to alimony. Additionally, at a hearing in the trial court, Grace Blair asserted,


 Nowhere does [the property division agreement] speak of the taxation
matters or the other matters that were included in the judgment nunc
pro tunc. Those things that were included were a modification of this
original order, without there ever having been pronounced that they
were part of the original order. [Grace] never agreed to any taxation
provisions in that. She agreed only to what shows on the docket sheet,
the entering of the order, the divorce decree and this property
settlement agreement, which shows what the alimony would be, support
to the wife, beginning January 1 but never did it discuss anywhere
taxation or taxation terminology in it.


 (Emphasis added). Thus, Grace conceded in the trial court that she had agreed to the
use of the term "alimony," she appeared to agree that the trial court had rendered a
judgment prior to the decree, and she only directly challenged the inclusion of the five
additional paragraphs related to tax liability in the judgment nunc pro tunc. Similar
to her position in the trial court, on appeal, Grace only directly challenges these five
additional paragraphs and does not appear to be directly complaining of the
modification of the terms "maintenance" in the first paragraph of the "spousal
support" provision of the decree to the term "alimony" in the judgment nunc pro tunc. 
In fact, in her appellate briefing, Grace appears to treat any modification of this
terminology as immaterial, as she contends that the decree already ordered Robert to
"pay certain alimony." (Emphasis added). We need not address whether the
modification of the terms in the first paragraph of the "spousal support" provision of
the decree has any material impact on the parties' ultimate tax obligations. Rather,
we only determine whether there is evidence to support the trial court's judgment
nunc pro tunc on the ground that the decree contained clerical errors.
8. In her briefing, Grace incorrectly refers to the inclusion of seven paragraphs in the
judgment nunc pro tunc, but she clearly identifies and challenges the five additional
paragraphs "related to tax liability on alimony payments" that are italicized in full in
this opinion. Grace contends that these paragraphs relating "to tax liability of alimony
payments ordered by the court were never included in either the final decree of
divorce, the property division agreement which was filed with the court, or the docket
sheet of the cause." (Emphasis added).
9. We note that even the judgment nunc pro tunc still uses the term "spousal support"
as the title of the disputed provision in the decree, and neither party discusses the title
of this provision. Thus, we do not address the effect, if any, of the use of the term
"spousal support" in the decree. 
10. Alimony is defined as "[a] court ordered allowance that one spouse pays to the other
spouse for maintenance and support . . . after they are divorced." Black's Law
Dictionary 73 (7th ed. 1999).